**UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellant,**

v.

**Scott HESTILOW, Elinor L. Hestilow, and Roger L. Hestilow, Appellees.**

No. 04–87–00138–CV.

Court of Appeals of Texas, San Antonio.

June 15, 1988.

Rehearing Denied July 19, 1988.

John Milano, Jr., Thornton, Summers, Biechlin & Dunham, San Antonio, for appellant.

Craig C. Radtke, Boerne, for appellees.

Before BUTTS, REEVES and CANTU, JJ.

## OPINION

REEVES, Justice.

This is an appeal from a judgment ordering appellant, United Services Automobile Association (USAA), to pay $15,000.00 automobile insurance benefits under its underinsured motorist coverage to the Hestilows. USAA claims the trial court erred in permitting its insureds, Elinor L. Hestilow, Roger L. Hestilow, and Scott Hestilow, appellees, to aggregate, or stack [1],

---

1. "Stacking" refers to the ability of the insured, when covered by more than one insurance policy, to obtain benefits from a second policy on the same claim when recovery from the first policy alone would be inadequate....

One court has noted that "[s]tacking is derived from the presumption that when the named insured purchases uninsured motorist coverage on more than one automobile, he intends to buy extra protection for himself and his

their underinsured motorist coverages from separate policies to determine whether the tortfeasor was an underinsured motorist.

## FACTS

The facts of the case were agreed to by the parties. Scott Hestilow, the son of Elinor L. and Roger L. Hestilow, while driving Elinor's automobile, collided with a vehicle driven by Alvino Casarez. Casarez' vehicle was insured by State and County Mutual Fire Insurance Company and carried bodily injury liability coverage with a maximum of $15,000.00 per person. Casarez' negligence was the sole proximate cause of the accident and of Scott's injuries. Scott's injuries exceed $30,000.00.

Scott settled with Casarez' carrier, after obtaining consent from USAA, for the maximum coverage under Casarez' bodily injury policy: $15,000.00

Elinor L. and Roger L. Hestilow were divorced and were living apart at the time of the accident. Each carried a separate auto liability insurance policy with USAA. Elinor had a policy covering the automobile Scott was driving which included underinsured motorist coverage with limits of $15,-000.00 per person and $30,000.00 per accident.[2] Roger also had a policy insuring his auto which provided limits of $15,000/30,-000 underinsured motorist coverage. His policy included Scott as a named operator.

The Hestilows sought to recover $15,000 from USAA under the two policies. Their position is that their two separate policies each provide $15,000.00 underinsured motorist coverage and that amount should be added together for a limit of $30,000.00 before offsetting the $15,000.00 settlement from Casarez' carrier. Stated another way, the single $15,000.00 settlement from Casarez' insurer should not be deducted twice—once from each policy covering

Scott. USAA refused to stack the coverages and claimed it owes the Hestilows nothing under their two policies, because they offset each policy coverage by the amount of the settlement:

| | |
|---|---|
| Elinor's underinsured motorist coverage: | $15,000.00 |
| Less the settlement with State & County Mutual: | (15,000.00 ) |
| USAA liability: | –0– |
| Roger's underinsured motorist coverage: | $15,000.00 |
| Less the settlement with State & County Mutual: | (15,000.00 ) |
| USAA Liability: | –0– |

The trial court determined that the two separate policies protecting Scott should be stacked to determine whether Casarez was an underinsured motorist. It entered judgment in favor of the Hestilows against USAA for $15,000.00, adjudged USAA to be jointly and severally liable under both policies, and awarded USAA an offset for the amount of the settlement with Casarez' carrier.

The sole issue before us is whether all underinsured motorist coverages available to an injured insured should be aggregated in order to determine whether a tortfeasor is an underinsured motorist pursuant to TEX.INS.CODE ANN. art 5.06–1 (Vernon 1981).

## HISTORY OF THE ACT

Article 5.06–1 was enacted by the 60th Legislature and became effective October 1, 1967. Originally, the Legislature provided only that uninsured motorist coverage was mandatory. The Legislature noted, in Section 3 of S.B. No. 219, that "the people of Texas are constantly exposed to financial loss caused by negligent financially irresponsible motorists" and stated "that it is the intent and purpose of this Act to provide a means of protecting the conscientious and thoughtful motorist against

family, regardless of whether his injury occurs in any one of his insured vehicles or elsewhere".... "Intra-policy stacking is the aggregation of the limits of liability for uninsured-motorist coverage of each car covered in one policy, whereas inter-policy stacking involves the aggregation of coverage under more than one policy."

*Nationwide Insurance Co. v. Gode,* 187 Conn. 386, 446 A.2d 1059, 1060 n. 2 (1982) (citations omitted).

**2.** We shall use insurance industry notations for policy limits. Thus, $15,000/30,000 indicates the policy provided $15,000.00 limits per person and $30,000.00 per accident.

such loss...." Act of Oct. 1, 1967, ch. 202, § 3, 1967 Tex.Gen.Laws 448, 449.

In 1977 the Legislature amended article 5.06–1 to include underinsured motor vehicle coverage as mandatory. The definitions of "uninsured" and "underinsured" motor vehicle have remained the same. *Compare* TEX.INS.CODE ANN. art. 5.06–1(2)(a), (b) (Vernon 1981) *with* Act of Aug. 29, 1977, ch. 182, § 1, 1977 Tex.Gen.Laws 370, 370–71. Sections 2(d), 3, 5, and 7 were also added in 1977. These sections also remain the same today. (See Appendix.)

Though it did not reiterate or expand its stated purpose and intent as set out in 1967, the Legislature did nothing to alter or diminish that purpose and intent.

In 1979 the Legislature completely rewrote section 4(b) to read as it does today. *Compare* TEX.INS.CODE ANN. art. 5.06–1(4)(b) (Vernon 1981) *with* Act of Jan. 1, 1980, ch. 626, § 1, 1979 Tex.Gen.Laws 1418. (See Appendix.) The next, and most recent, changes occurred during the 1981 legislative session, and included only minor language and punctuation changes. *Compare* Act of Aug. 31, 1981, ch. 380, § 1, 1981 Tex.Gen.Laws 1002 *with* Act of Jan. 1, 1980, ch. 626, § 1, 1979 Tex.Gen.Laws 1418. Again, no changes in the purpose or intent of the act were indicated.

Several courts of appeals have stated that:

> [t]he purpose of underinsured motorist coverage is to provide an individual injured by a motorist carrying insurance in an amount less than that required by law, or otherwise reduced by payments to other claimants in the same accident, to an amount less than required by law, *with no less coverage* than the injured party would receive had the tort feasor been fully insured or fully covered in relation to plaintiffs' underinsured motorist coverage under the law.

*See Infante v. Texas Farmers Insurance Co.*, 640 S.W.2d 321, 323 (Tex.App.—Beaumont 1982, writ ref'd n.r.e.) (emphasis added); *Muller v. Allstate Insurance Co.*, 627 S.W.2d 775, 777 (Tex.App.—Houston [1st Dist.] 1981, no writ). The unambiguous language of article 5.06–1 permits the insured coverage in an amount in excess of the statutory minimum. Subsection 2(b) defines underinsured motor vehicle as:

> an insured motor vehicle on which there is valid and collectible liability insurance coverage with limits of liability for the owner or operator which were originally lower than, or have been reduced by payment of claims arising from the same accident to, *an amount less than the limit of liability stated in the underinsured coverage of the insured's policy.*

TEX.INS.CODE ANN. art. 5.06–1(2)(b) (Vernon 1981) (emphasis added). The minimum coverage is set out in the Texas Motor Vehicle Safety–Responsibility Act. *See* TEX.REV.CIV.STAT.ANN. art. 6701h, § 5(c)6 (Vernon Supp.1988). The Legislature clearly had no intention of limiting the amount of underinsured motorist protection available to the minimum set by law, but left it up to the discretion of each individual policy holder to obtain higher coverage by defining underinsured motor vehicle in terms of the injured party's own underinsured motorist coverage. Thus, an insured is intended to be protected to the maximum underinsured motorist coverage he purchased. *See Connolly v. Royal Globe Insurance Co.*, 455 A.2d 932, 935 (Me.1983).

### STACKING UNINSURED MOTORIST COVERAGE

█ Texas has traditionally permitted stacking of uninsured motorist coverage when different policies apply to the same accident. The courts have relied on the fact that article 5.06–1 "does not expressly or by any reasonable inference limit *the recovery* of actual damages to the statutory limits of required coverage for one policy in circumstances where the conditions to liability are present with respect to two policies with different insurers and insureds." *American Liberty Insurance Co. v. Ranzau*, 481 S.W.2d 793, 797 (Tex. 1972); *Fidelity & Casualty Co. of New York v. Gatlin*, 470 S.W.2d 924, 927–28 (Tex.Civ.App.—Dallas 1971, no writ). The Texas Supreme Court further noted that the injured party was covered under both

policies—one taken out by the owner of the car in which he was a passenger, and the other, his own policy protecting him in an unowned automobile—and that:

> [t]his was a contractual benefit for which premiums, presumably computed in the light of the respective risk exposures, were paid by the insureds in each instance; and to permit one policy, or the other, to be reduced or rendered ineffective by a liability limiting clause would be to frustrate the insurance benefits which the statute sought to guarantee and which were purchased by the respective insureds.

*American Liberty Insurance Co. v. Ranzau,* 481 S.W.2d at 797.

The Dallas court of appeals explained why uninsured motorist coverages should be stacked when multiple policies are involved:

> Our law was obviously enacted by our Legislature for the benefit of the innocent victim of a financially irresponsible motorist. It should be liberally construed to fully accomplish that purpose. By enacting the law the Legislature did not attempt to fix any maximum limit of recovery but merely established a minimum requirement. The statute is plain in its direction that each policy of insurance issued must contain uninsured motorist protection in minimum amounts, without qualification, and it necessarily follows that any attempt on the part of an insurer to limit the effect of such provision must be held to be in derogation of the statute itself. It would be unconscionable to permit insurers to collect a premium for a coverage which they are required by statute to provide, and then to avoid payment of a loss because of language of limitation devised by themselves.

*Fidelity & Casualty Co. of New York v. Gatlin,* 470 S.W.2d at 927.

Similarly, when the Legislature expanded article 5.06–1 to mandate that no automobile insurance policy shall be issued without providing the minimum legal coverage for an underinsured motorist, it did so in the same statute mandating uninsured coverage. The statute makes no mention of maximum amounts, other than as limited by the policy's bodily injury or property damage coverage limits.

Subsection 5 of article 5.06–1 states that:

> underinsured motorist coverage shall provide for payment to the insured of all sums which he shall be legally entitled to recover as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage *in an amount up to the limit specified in the policy, reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.*

TEX.INS.CODE ANN. art. 5.06–1(5) (Vernon 1981) (emphasis added). Clearly, the Legislature intended the injured party to recover fully for his damages to the extent he was a beneficiary under a policy and for which premiums were paid. The effect of denying stacking in circumstances such as this is to deny the policy holder the benefits for which he paid premiums and for which the Legislature mandated coverage. Each insurer, under each separate policy, has deducted the total amount paid by the tortfeasor's insurance company, thus avoiding making any payment and rendering the underinsured motorist protection meaningless.

Thus, the underinsured motorist liability limits available to the injured party under *separate* policies of insurance must be stacked in order to determine whether the tortfeasor is underinsured.[3] In this case,

---

**3.** Other state appellate courts have considered the issue of stacking underinsured motorist coverage. The majority hold in favor of stacking in order to effectuate the legislative intent behind the statute. *See, e.g., Nationwide Insurance Co. v. Gode,* 187 Conn. 386, 446 A.2d 1059 (1982); *Ivey v. Chicago Insurance Co.,* 410 So.2d 494 (Fla.1982); *State Farm Mutual Automobile Insurance Co. v. Hancock,* 164 Ga.App. 32, 295 S.E.2d 359 (1982); *Connolly v. Royal Globe Insurance Co.,* 455 A.2d 932 (Me.1983); *Pickering v. American Employers Insurance Co.,* 109 R.I. 143, 282 A.2d 584 (1971). *But see New Jersey Manufacturers Insurance Co. v. Franklin,* 160 N.J.Super. 292, 389 A.2d 980 (1978).

the insurance carrier is the same for the two separate policies. We find this fact to be irrelevant in our determination to allow stacking. USAA received premium payments under each policy and presumably it determined its risk for each separate policy. This is no different than had one of the policies been issued by a different insurance carrier. By allowing USAA to offset against each of its policies the amount paid by the underinsured motorist's carrier, USAA would be receiving a double setoff, *see Steinhaeufel v. Reliance Insurance Cos.*, 495 S.W.2d 463, 468 (Mo.App.1973), or a windfall. The insurance company collected premiums on statutorily required insurance coverage. To permit it to deny recovery under one of its policies would mean it profited under the statute to the insured's detriment. Such cannot possibly have been the intention of the Legislature.

## STATUTORY INTERPRETATION

It has been held that the act is to be liberally construed so as to give effect to the public policy declared therein. *Employers Casualty Co. v. Sloan*, 565 S.W.2d 580, 583 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.).

When interpreting the statute, we are directed to ascertain the legislative intent and we must consider at all times the old law, the evil, and the remedy. TEX. GOV'T.CODE ANN. § 312.005 (Vernon Supp.1988). The old law provided insurance protection only when the tortfeasor carried no liability insurance. Thus arose the evil—the inequity to an injured insured driver who was unprotected when the tortfeasor carried some, but inadequate, liability protection. This placed the injured insured in the ridiculous position of having been better off had the tortfeasor carried no insurance.

■ Uninsured motorist coverage applies when the tortfeasor carries absolutely no automobile liability coverage or when no coverage is available through his carrier because it has become insolvent. Underinsured motorist coverage, however, is activated only when the tortfeasor has valid and collectible liability coverage, but the limits of the policy's liability are either originally less than the injured party's underinsured motorist coverage limits, or have been reduced to an amount lower than the injured party's underinsured motorist limits due to the payment of claims arising out of this same accident.[4]

The purpose underlying both the uninsured and underinsured motorist coverage requirements is to protect a responsible injured insured party from financial loss due to a driver who provides no or inadequate liability protection.

■ When the Legislature amended article 5.06–1 to include underinsured motorist coverage in 1977, the Texas Supreme Court had already interpreted the uninsured motorist coverage mandate of that article to require the stacking of separate policies. *See American Liberty Insurance Co. v. Ranzau*, 481 S.W.2d at 797. Since the law at the time of the amendment permitted inter-policy stacking of uninsured motorist coverage, we presume the Legislature's failure to exclude stacking indicated their intention to permit inter-policy stacking of underinsured motorist coverage. This interpretation further comports with the statute's allowance for the insured to obtain higher than the minimum coverage of underinsured motorist protection.

In light of the rule requiring liberal construction to effectuate legislative intent, as well as the stated intent and purpose of the act, it is difficult to construe the statute as prohibiting the stacking of underinsured motorist coverage benefits. We see no valid rationale for treating underinsured motorist coverage any differently for this is-

---

**4.** Appellant urges that "uninsured" does not mean "underinsured." *Villarreal v. Texas Farmers Insurance Co.*, 510 S.W.2d 633, 637 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.); *Kemp v. Fidelity & Casualty Co. of New York*, 504 S.W.2d 633, 637 (Tex.Civ.App.—Eastland 1973, writ ref'd n.r.e.). These cases, however, were decided prior to the amendatory language adding underinsured motorist protection. Additionally, the courts in these cases were presented with the issue of whether to expand the definition of uninsured motor vehicle to include an underinsured motor vehicle.

sue than uninsured motorist coverage when both coverages appear side by side in the same statute.

## "OTHER INSURANCE" CLAUSES

■ The appellant contends that its liability is limited by the other insurance clause of the policy. "Other insurance" clauses ("excess-escape" clauses and "pro-rata" clauses) apply when the injured insured is a passenger in an unowned automobile. The excess-escape clause is part of the non-owner's insurance policy and the pro-rata clause is part of the owner's insurance policy. The excess-escape clause limits the insurer's liability or supplements other similar applicable insurance. *See Comment,* A Collection of Recent Texas Cases on Stacking Uninsured Motorist Coverage, 11 HOUS.L.REV. 466, 466 n. 4 (1974); *Comment,* Pyramiding of Uninsured Motorist Protection: The Confusion Inherent in Overgeneralization, 5 St. Mary's L.J. 568, 574 (1973).

"Other insurance" clauses have been found to be invalid to limit the recovery of an injured party under his uninsured motorist provision. *American Motorists Insurance Co. v. Briggs,* 514 S.W.2d 233, 236 (Tex.1974); *American Liberty Insurance Co. v. Ranzau,* 481 S.W.2d at 797; *Fidelity & Casualty Co. of New York v. Gatlin,* 470 S.W.2d at 927. Appellant urges that such clauses are valid and have been upheld when applied to reduce the limit of liability to an insured under his underinsured motorist coverage by the amount recovered from the tortfeasor. The distinction between the two, however, is not that "other insurance" clauses must be considered valid when applied to underinsured motorist coverage. The distinction is that article 5.06–1(5) specifically provides for such a reduction for underinsured motorist coverage. The intention being that the injured insured party is to be protected for the amount the tortfeasor is unable to provide the liability protection. When uninsured motorist coverage is applicable, there is no payment by the tortfeasor's insurance carrier. With underinsured motorist coverage, the tortfeasor's insurer's payment

must be deducted. At this point, the tortfeasor is similar to an uninsured motorist.

Nowhere in article 5.06–1 does any language appear that would indicate any intention on the part of the Legislature to allow the insurer to reduce underinsured motorist benefits to an amount less than that contracted for, save and except the payment by the tortfeasor's insurer. Thus, the insurer may not use "other insurance" clauses to reduce its underinsured motorist liability to the injured insured.

## USAA INSURANCE POLICY

Appellant argues that pursuant to Part C of its insurance policies with the Hestilows, the most it must pay under the underinsured motorist coverages is $15,000.00, regardless of the number of policies applicable to the accident. The policy provides:

The limit of liability shown in the Declarations for "each person" for bodily injury liability is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for bodily injury liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident. The limit of liability shown in the Declarations for "each accident" for property damage liability is our maximum limit of liability for all damages to all property resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. Covered persons;
2. Claims made;
3. *Policies or bonds applicable;*
4. Vehicles or premiums shown in the Declarations; or
5. Vehicles involved in the accident.

The limit of liability shall be reduced by the amount recovered or recoverable from, or on behalf of, the owner or operator of an uninsured motor vehicle.

In order to avoid insurance benefits payments in excess of actual damages sustained, subject only to the limits set out

in the Declarations and other applicable provisions of this coverage, we will pay all covered damages not paid or payable under any workers' compensation law, disability benefits law, any similar law, auto medical expense coverage or Personal Injury Protection Coverage.

Any payment under this coverage to or for a covered person will reduce any amount that person is entitled to recover for the same damages under the Liability coverage of this policy.

(Emphasis added.)

We need not reach this issue, since $15,-000.00 is all USAA is liable for. After stacking the two separate policies, we find the Hestilows have $30,000.00 underinsured motorist coverage. The tortfeasor's insurer paid $15,000.00, thus leaving USAA responsible for $15,000.00—the maximum under either of its policies.

## STRACENER

We recognize the Houston Court of Appeals, in *Stracener v. United States Automobile Association,* 749 S.W.2d 158 (Houston [1st Dist.], 1988), held that stacking insurance policies to determine whether a tortfeasor was underinsured was not permissible. It rationalized that article 5.06–1 speaks in terms of "policy" in the singular rather than in the plural, and therefore the Legislature must have intended no stacking. The court, however, made no mention of the Code Construction Act, TEX.GOV'T. CODE ANN. § 312.003(b) (Vernon Supp. 1988), which provides that, unless expressly provided otherwise, the singular includes the plural. The court also relied on the language of the injured party's underinsured motorist policy, which defined underinsured motorist in terms of the liability limit of "this coverage," and found that language to mean that particular policy, and no other, rather than just underinsured motorist coverage. Thus, the court found the tortfeasor was not underinsured because he carried $27,500.00 liability coverage and the injured party carried $15,-000.00 in the USAA policy (plus $135,000.00 underinsured motorist coverage by three other insurance carriers).

The Houston court further found that USAA was not jointly and severally liable with the other three carriers because all four policies did not apply to this accident.

For the reasons presented earlier in this opinion, we cannot agree with the Houston court's rationale or its conclusion.

## CONCLUSION

■ We hold that in order to determine the status of a tortfeasor as an underinsured motorist, all applicable policies available to the injured party as underinsured motorist coverage must be aggregated, or stacked. The amount paid to the injured party by the tortfeasor's liability carrier must be deducted from the injured party's recovery. Each insurer, under whose policy the injured party is a beneficiary for underinsured motorist benefits, is jointly and severally liable up to the policy limit of its separate policy, limited to the extent of the injured insured party's actual damages.

The judgment of the trial court is affirmed.

## APPENDIX

Article 5.06–1, as it reads today, provides:

Art. 5.06–1. Uninsured or Underinsured Motorist Coverage

(1) No automobile liability insurance (including insurance issued pursuant to an Assigned Risk Plan established under authority of Section 35 of the Texas Motor Vehicle Safety–Responsibility Act), covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto, in at least the limits described in the Texas Motor Vehicle Safety–Responsibility Act, under provisions prescribed by the Board, for the protection of persons insured thereunder who are legally entitle to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, or property damage resulting therefrom. The coverages required under this

Article shall not be applicable where any insured named in the policy shall reject the coverage in writing; provided that unless the named insured thereafter requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer or by an affiliated insurer.

(2) For the purpose of these coverages: (a) the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency.

(b) The term "underinsured motor vehicle" means an insured motor vehicle on which there is valid and collectible liability insurance coverage with limits of liability for the owner or operator which were originally lower than, or have been reduced by payment of claims arising from the same accident to, an amount less than the limit of liability stated in the underinsured coverage of the insured's policy.

(c) The State Board of Insurance is hereby authorized to promulgate the forms of the uninsured and underinsured motorist coverages. The Board may also, in such forms, define "uninsured motor vehicle" to exclude certain motor vehicles whose operators are in fact uninsured.

(d) The forms promulgated under the authority of this section shall include provisions that, regardless of the number of persons insured, policies or bonds applicable, vehicles involved, or claims made, the total aggregate limit of liability to any one person who sustains bodily injury or property damage as the result of any one occurrence shall not exceed the limit of liability for these coverages as stated in the policy and the total aggregate limit of liability to all claimants, if more than one, shall not exceed the total limit of liability per occurrence as stated in the policy; and shall provide for the exclusion of the recovery of damages for bodily injury or property damage or both resulting from the intentional acts of the insured. The forms promulgated under the authority of this section shall require that in order for the insured to recover under the uninsured motorist coverages where the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, actual physical contact must have occurred between the motor vehicle owned or operated by such unknown person and the person or property of the insured.

(3) The limits of liability for bodily injury, sickness, or disease, including death, shall be offered to the insured in amounts not less than those prescribed in the Texas Motor Vehicle Safety–Responsibility Act and such higher available limits as may be desired by the insured, but not greater than the limits of liability specified in the bodily injury liability provisions of the insured's policy.

(4)(a) Coverage for property damage shall be offered to the insured in amounts not less than those prescribed in the Texas Motor Vehicle Safety–Responsibility Act and such higher available limits as may be desired by the insured, but not greater than limits of liability specified in the property damage liability provisions of the insured's policy, subject to a deductible amount of $250.

(b) If the insured has collision coverage and uninsured or underinsured property damage liability coverage, the insured may recover under the policy coverage chosen by the insured. In the event neither coverage is sufficient alone to cover all damage resulting from a single occurrence, the insured may recover under both coverages. When recovering under both coverages, the insured shall designate one coverage as the primary coverage and pay the deductible applicable to that coverage. The primary coverage must be exhausted before any recovery is made under the secondary coverage. If both coverages are utilized in the payment of damages from a single occurrence, the insured shall not be required to pay the deductible applicable to the second-

ary coverage when the amount of the deductible otherwise applicable to the secondary coverage is the same as or less than the amount of the deductible applicable to the primary coverage. If both coverages are utilized in the payment of damages from a single occurrence and the amount of the deductible otherwise applicable to the secondary coverage is greater than the amount of the deductible applicable to the primary coverage, the insured shall be required to pay in respect of the secondary coverage only the difference between the amount of the two deductibles. In no event shall the insured recover under both coverages more than the actual damages suffered.

(5) The underinsured motorist coverage shall provide for payment to the insured of all sums which he shall be legally entitled to recover as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage in an amount up to the limit specified in the policy, reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.

(6) In the event of payment to any person under any coverage required by this Section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury, sickness or disease, or death for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer; provided, however, whenever an insurer shall make payment under a policy of insurance issued pursuant to this Act, which payment is occasioned by the insolvency of an insurer, the insured of said insolvent insurer shall be given credit in any judgment obtained against him, with respect to his legal liability for such damages, to the extent of such payment, but such paying insurer shall have the right to proceed directly against the insolvent insurer or its receiver, and in pursuance of such right such paying insurer shall possess any rights which the insured of the insolvent company might otherwise have had if the insured of the insolvent insurer had made the payment.

(7) If a dispute exists as to whether a motor vehicle is uninsured, the burden of proof as to that issue shall be upon the insurer.