**ALLSTATE INSURANCE COMPANY,**
Petitioner,

v.

**Charles H. ZELLARS et al., Respondents.**

**No. B–2143.**

Supreme Court of Texas.

Oct. 7, 1970.

McMahon, Smart, Sprain, Wilson & Camp, Marvin S. Sprain, Abilene, for petitioner.

Shafer, Gilliland, Davis, Bunton & McCollum, W. O. Shafer and Ray Stoker, Jr., Odessa, Charles L. Price, Houston, for respondents.

SMITH, Justice.

Respondent Zellars filed this action for a declaratory judgment against Petitioner Allstate, his personal insurer, to determine the extent, if any, of Allstate's duty to defend and indemnify Zellars from loss resulting from a suit pending against him in Taylor County. The latter suit, filed by the Bama Company, arose from a collision involving a Bama vehicle and a truck driven by Zellars but owned by his employer, Respondent Humble Pipe Line Company. Allstate brought Humble into the present suit as a third party defendant asking for a declaration that Humble, a self-insurer under Article 6701h, Vernon's Ann.Texas Civil Statutes, had the duty to defend Zellars against the Bama Company suit, and to pay any judgment which might be entered against him in that suit. At the close of the evidence, the trial court granted Humble an instructed verdict, and submitted the controversy between Zellars

and Allstate to the jury. The jury found all issues in favor of Zellars, and the court entered a judgment declaring that Allstate was bound to provide Zellars with a defense against the Bama Company suit, and to indemnify him against any judgment that might be entered against him as a result of that suit; the court also ordered that Zellars was entitled to indemnity for property damage up to $10,000 although his policy, which insured his two personal automobiles, limited property damage liability to $5,000. The Court of Civil Appeals, except for reforming the judgment in a matter no longer in the case, affirmed. 452 S.W.2d 539. We reform and affirm.

■ We first consider Petitioner Allstate's contention that Humble Pipe Line Company is charged with the primary duty to defend and indemnify its permissive driver, Zellars, by virtue of the fact that Humble is a self-insurer under the Texas Safety Responsibility Act, Article 6701h, Vernon's Texas Civil Statutes. This, Allstate contends, is required by the standard provision in part IV of the policy:

" * * * the insurance with respect to a non-owned automobile shall be excess insurance over *any other valid and collectible insurance.*" [Emphasis added.]

We overrule this point. We have considered the question before, in the case of Home Indemnity Insurance Company v. Humble, 159 Tex. 224, 317 S.W.2d 515 (1958), Per Curiam opinion refusing, no reversible error, the application for writ of error from 314 S.W.2d 861 (Tex.Civ. App.—Dallas 1958). The essential facts of *Home Indemnity* are indistinguishable from those of the instant case. Four principles underlie the Court of Civil Appeals' holding in that case: first, the legislative intent of the Safety Responsibility Act was to protect the public, and Humble's duties as a self-insurer expressly extend to that obligation; second, although the negligent driver, Cole, was liable at common law to the injured party, Humble was not liable at common law, because

Cole was performing a strictly personal mission at the time of the accident; third, Humble, as a self-insurer was under statute *jointly* liable to the injured party with Cole, its negligent permissive driver; and finally, the negligent driver was primarily liable to the injured party, while Humble was secondarily liable; thus, if the injured party had filed suit against the driver and Humble jointly, Humble could have pleaded over against the driver, the actively negligent party, and could have recovered a judgment against him for whatever sum Humble was required to pay out. The Court of Civil Appeals held:

"But to relieve the Home Indemnity Company of primary liability in this case, the 'other collectible insurance' must be insurance inuring to the benefit of its policy holder Cole and 'collectible' by him. He could not sustain a suit against Humble, his employer, for recoupment of damages paid by him in satisfaction of a judgment rendered against him as a result of his own *primary* negligence; and neither can the Insurance Company in its own behalf, as an indemnitor and on exactly the same footing as Cole, its insured." 314 S.W.2d 865.

In our Per Curiam opinion we stated:

"We agree with the holding of the Court of Civil Appeals that the qualification of Humble Oil & Refining Company as a self-insurer under Article 6701h, Vernon's Annotated Texas Statutes, did not provide D. O. Cole with other 'valid and collectible insurance' within the meaning of the policy of public liability insurance issued to D. O. Cole by The Home Indemnity Company * * *." 317 S.W. 2d at 515.

As noted, the facts of the *Home Indemnity* case are the same as those in this case.

A statement of the facts of our case will facilitate understanding of what follows. At the time of the accident giving rise to the Bama Co. v. Zellars action, Zellars was employed as a "swamper," or helper,

by Humble; he had been assigned to accompany Henry Saffell, an Humble truck driver, on a trip in a two-and-one-half ton tractor with a trailer loaded with equipment. They first went from Odessa to Abilene, where they unloaded some of the equipment, and then to Childress where they spent the night. The next morning they went to an Humble lease station located between Childress and Paducah where they took on another load, and then returned to Abilene; they arrived at 6:30 or 7:00 that evening. At that time their wages ceased, although Humble did compensate them for their food and lodging expenses on this and other out-of-town trips. They immediately checked into a motel, and Zellars took a bath and napped until 8:30 or 9:00. When he woke, Zellars discovered that Saffell, the driver, had already eaten; so Zellars asked for and received Saffell's permission to use the truck to go to a cafe located on Highway 36, on the outskirts of Abilene. There was a cafe open for business in the motel, but Zellars preferred to dine at the other cafe. Before leaving the motel parking lot, Zellars detached the trailer from the tractor, and left the trailer in the lot.

En route to the cafe, Zellars stopped at the American Legion Hall where he stayed for a while and played bingo. Eventually he encountered old friends at the Hall and later they left for the friends' home in Abilene. He did not leave their house until about 1:30 a. m.; at that time he again set out, in the Humble truck, for the cafe on Highway 36. It was on that highway that Zellars collided with the Bama Company vehicle which allegedly sustained over $6,000 in property damage. Zellars notified Allstate, his personal insurer, of the accident; Allstate determined and notified Zellars that his policy did not apply to the accident.

■ One of the bases of Allstate's refusal to defend and indemnify Zellars against the Bama Company's suit is its contention that a policy exclusion is applicable to the incident. Part I of the policy includes an obligation

"To pay on behalf of the insured, all sums which the insured shall become legally obligated to pay as damages because of:

\* \* \* \* \* \*

B. Injury to or destruction of property, including loss of use thereof, hereinafter called 'property damage';

arising out of the \* \* \* use of \* \* \* any non-owned automobile, and the company shall defend any suit alleging such \* \* \* property damage and seeking damages which are payable under the terms of this policy. \* \* \*"

The exclusion relied upon by Allstate provides:

"This policy does not apply under Part I to a non-owned automobile while maintained or used by any person while such person is employed or otherwise engaged in \* \* \* (2) Any \* \* \* business or occupation of the insured \* \* \*."

The applicability of this exclusion was submitted to the jury in Special Issue Number 2. In response, the jury found that at the time of the collision with the Bama vehicle Zellars was not using the Humble truck in his business or occupation. The trial court's instruction accompanying this special issue, which defined "using the Humble truck in his business or occupation" to mean that the use was in the course and scope of Zellars' employment, was apparently patterned upon the holding of Mitchell v. Ellis, 374 S.W.2d 333 (Tex. Civ.App.—Fort Worth 1963, writ ref'd).

Allstate's objection to this instruction essentially was that the instruction was unduly narrow and restrictive, and unjustifiably imported the concept of scope of employment into the exclusion. Allstate has cited Globe Indemnity Co. v. Jett, 367 S.W.2d 396 (Tex.Civ.App.—Austin 1963, writ ref'd n.r.e.), as the only Texas case considering this exclusion, but concedes

that the case is not in point. Allstate has cited two other cases from other jurisdictions. Seaboard Fire & Marine Ins. Co. v. Gibbs, 392 F.2d 793 (4th Cir. 1968), and Merchants Mut. Cas. Co. v. Capobianco, 100 N.H. 223, 123 A.2d 159 (1956), but neither is in point. Neither holds that an employee, the permissive user of his employer's truck, is engaged in his occupation while performing acts of a purely personal and recreational nature.

It is unnecessary for us to decide, as the court below decided whether the instruction by the trial court is "substantially correct," for we hold as a matter of law that the exclusion is inapplicable to the facts of this case.

■ Allstate next contends that the Court of Civil Appeals erred in upholding the portion of the trial court's judgment which declared that Zellars is entitled to indemnity for the destruction of and damage to property to the value of $10,000, twice the amount stated as the limit of liability on Allstate's Renewal Certificates for Zellars' automobiles. We sustain this contention. The court below quoted various policy provisions which it apparently found to be in conflict, whereas, we find they are not. The applicable limitation of liability clause provides:

> "The limit of property damage liability stated in the declarations as applicable to 'each occurrence' is the total limit of the company's liability for all damages arising out of injury to or destruction of all property of one or more persons or organizations, including the loss of use thereof, as the result of any one occurrence."

Zellars was issued a Renewal Certificate for each of his two cars, and each states that $5,000 per occurrence is the limit of liability under Coverage B, Property Damage Liability. The Certificates also state:

> "The insurance afforded by this Renewal Certificate is only with respect to such as the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto."

And, additionally, the court quoted the fourth Condition of the policy, captioned "Two or More Automobiles":

> "When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each * * *."

The Court interpreted the policy to mean that Zellars was insured up to $10,000. It set forth three grounds for its conclusion: (1) If the insurer had wished to limit its liability to $5,000, regardless of how many cars were insured under the policy, it could have done so in certain language, but instead it left the policy ambiguous. (2) A separate premium was charged for each of Zellars' automobiles, so that effectively Zellars had two policies of insurance, or the equivalent of two policies with different companies. (3) Although the coverage is not related to a particular automobile so that Zellars would have been covered in a non-owned automobile even if he had owned and insured with Allstate only one automobile, when Zellars paid a second premium for an additional car, he paid for an additional amount of coverage in a non-owned automobile also.

We disagree. The Renewal Certificates plainly limit property damage liability to $5,000 per occurrence, and the policy's limitation of liability clause, quoted above, also states that the company's total liability for each occurrence is that sum stated in the declarations. The "Two or More Automobiles" condition, providing that if two or more automobiles are insured under the policy, its terms apply separately to each, creates no uncertainty, for the simple reason that neither of the insured automobiles was involved in the collision giving rise to this claim.

Neither are we persuaded by the argument that Allstate, by making two separate premium charges for Zellars' two automobiles, has in essence issued two separate policies of insurance. The court below remarked that this is the same as if Zellars had had two policies with separate companies, but Zellars' position is not strengthened by that theory. If that were the case, both policies would contain the "excess insurance" clause discussed above, providing that the coverage of non-owned automobiles is "excess insurance over any other valid and collectible insurance"; the two clauses would obviously be in conflict with each other. This Court considered a similar conflict question in Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exchange, 444 S.W.2d 583 (Tex.Sup. 1969). The conflict in that case was between an "excess" insurance clause identical to the one in this Allstate policy, and an "escape" or non-liability clause which extended coverage only if no other valid and collectible insurance, with limits at least equal to the minimum required by law, was applicable. We held in that case that the two conflicting clauses cancelled each other, so that both carriers were equally liable to the insured; but we noted that the insured was covered by either policy only to the minimum extent required by law, and held:

"The insured in this case has coverage *up to those limits from both Hardware and Farmers.* The two concurrent policies cover Anita Hyde [the insured]. The liability is equally prorated between the two companies * * *." 444 S.W. 2d at 590 [emphasis added].

Thus, even if Zellars is protected by two discrete contracts of insurance, he still cannot expect to receive more coverage than he purchased, $5,000.

In this case the Court of Civil Appeals relied upon assertedly analogous cases involving medical payment coverage, Southwestern Fire and Casualty Co. v. Atkins, 346 S.W.2d 892 (Tex.Civ.App.—Houston

1961, no writ hist.) and Harlow v. Southern Farm Bureau Cas. Ins. Co., 439 S.W.2d 365 (Tex.Civ.App.—Austin 1969, writ ref'd n. r. e.); see Anno., 21 A.L.R.3d 900. In the *Atkins* case, the insured had paid premiums on two cars for medical payment coverage; the limit of liability in both instances was $500. Medical payment coverage is not limited to injuries sustained in the described automobile, but rather insures against actual medical expenses incurred as the result of any automobile accident. The insured was injured in an automobile accident, incurring medical expenses in excess of $500, and the court held that he was entitled to recover up to the amount of $1,-000. The court in *Atkins* concisely stated the rationale of its holding and that of the *Harlow* case:

"* * * if the insured had taken out medical payments on only one car, he could recover the sum of $500, * * *. In other words, if he can collect only $500, he is no better off for having taken out medical payments on both cars than on one car, since he could have recovered the same amount had he taken out medical payments on only the one car. Hence there is no consideration for the payments of the premium on the second car, if we accept appellant's construction of the contract." 346 S.W.2d at 894.

Assuming that the *Atkins* and *Harlow* cases are correct, the distinctions between that form of insurance and the liability insurance in issue in this case preclude their being authority for the decision of the court below. Those distinctions were thoroughly outlined in Allstate Ins. Co. v. Mole, 414 F.2d 204 (5th Cir. 1969), in which the court applied the law of Florida. The court noted that, unlike medical payment coverage for which the insured optionally pays a separate premium, non-owned vehicle coverage "is separate insurance * * *. * * * The policy holder is already covered while driving all non-owned vehicles, regardless of the number of owned vehicles named in the policy, *and pays no additional premium*

*for non-owned vehicles coverage if an additional car is added to the policy."* 414 F.2d at 207 [emphasis added]. See also Polland v. Allstate Ins. Co., 25 A.D.2d 16, 266 N.Y.S.2d 286 (1966), which apparently is the only other case considering the precise facts before this Court and which, like *Mole,* limits the insured's coverage to the amount stated in the policy. We agree with the holdings of those cases, and with the distinction made therein between medical payments coverage and non-owned automobile coverage. If Zellars had in fact paid an additional premium for non-owned automobile coverage when he added the second car to his policy, the medical payments cases would lend stronger support to his claim. But there is no proof of such an additional premium; the Renewal Certificates which indicate the amount charged for the various forms of coverage under the policy are silent as to the amount, if any, charged for non-owned automobile coverage.

The judgment of the Court of Civil Appeals is modified and reformed so as to declare Allstate's liability for property damage to be limited to $5,000. As so modified and reformed, the judgment is affirmed.