The TRAVELERS INDEMNITY
COMPANY OF RHODE
ISLAND, Appellant,

v.

R. Lenny LUCAS and Terri Lynn
Lucas, Appellees.

No. 9222.

Court of Appeals of Texas,
Texarkana.

Sept. 25, 1984.

Bradley C. Poulos, Atchley, Russell, Waldrop & Hlavinka, Texarkana, for appellant.

E. Ben Franks, Lavender, Rochelle, Barnette, Franks & Arnold, Texarkana, Ark., for appellees.

CORNELIUS, Chief Justice.

Travelers Insurance Company appeals a judgment awarding Mr. and Mrs. Lucas insurance benefits under personal injury protection (P.I.P.) and uninsured motorist (U.M.) coverage of two automobile insurance policies. Travelers challenges the trial court's interpretation of several policy clauses. We affirm the judgment.

Mr. Lucas was en route to a Dallas hospital in an ambulance. His wife accompanied him in the ambulance. On the freeway outside Mesquite, an automobile driven by an intoxicated and uninsured driver jumped the median and ran head-on into the ambulance, causing injuries to Mr. and Mrs. Lucas.

Mr. Lucas carried two separate automobile policies with Travelers.[1] Travelers paid Mr. and Mrs. Lucas $2,500.00 each in P.I.P. benefits under one policy and refused to pay further amounts. Both insurance policies contain the following clause which Travelers contends terminated the first policy on the effective date of the second policy it issued covering the same auto:

36. Renewal. If this policy is written for a policy period of less than one year, the company agrees that it will not refuse to renew except as of the expiration of the policy period which coincides with the end of an annual period commencing with its original effective date.

---

1. Mr. Lucas originally had a single policy covering two cars with Travelers. He obtained a second policy on the same two cars from Travelers through a second insurance agent. He paid premiums on both policies.

The company agrees that it will not refuse to renew because of the ages of the insureds.

If the company elects not to renew this policy, it shall mail to the insured named in Item 1 of the declarations at the address shown in this policy, written notice of such nonrenewal not less than thirty days prior to the expiration date. The company may comply with the provisions of this paragraph by requiring or permitting its agent to mail such notice, provided, however, the responsibility remains with the company in the event its agent fails to mail the required notice. Notwithstanding the failure of the company to comply with the foregoing provisions of this paragraph, this policy shall terminate

1. on such expiration date, if

(a) the named insured has failed to discharge when due any of his obligations in connection with the payment of premium for this policy or any instalment (sic) thereof, whether payable directly to the company or its agent or indirectly under any premium finance plan or extension of credit, or

(b) the company has by any means manifested its willingness to renew to the named insured or his representative; or

2. on the effective date of any other automobile insurance policy, with respect to any automobile designated in both policies.

The mailing of notice as aforesaid shall be sufficient proof of notice. Delivery of such written notice by the company shall be equivalent to mailing.

■ In interpreting an insurance contract, we construe ambiguous terms in favor of the insured and construe all parts of the contract together to effectuate the intent of the parties. *American-Amicable Life Ins. Co. v. Lawson*, 419 S.W.2d 823 (Tex.1967); *Pan American Life Ins. Co. v. Andrews*, 161 Tex. 391, 340 S.W.2d 787 (1960); *United American Ins. Co. v. Selby*, 161 Tex. 162, 338 S.W.2d 160 (1960). We construe the language according to the subject matter it relates to, *State Farm Mut. Auto. Ins. Co. v. Pan American Ins. Co.*, 437 S.W.2d 542 (Tex.1969); *Hardware Dealers Mut. Ins. Co. v. Berglund*, 393 S.W.2d 309 (Tex.1965), and interpret uncertain language to avoid a forfeiture, defeasance, or diminution of the contract. *First Texas Prudential Ins. Co. v. Ryan*, 125 Tex. 377, 82 S.W.2d 635 (1935).

■ As indicated, the provision is placed in the policy under the heading "Renewal." Separate headings concern cancellation, either by the insured or the company. Cancellation by the company is permitted only for two stated reasons, neither of which is involved here. An additional provision entitled "Other Insurance" limits the amount of recovery when the insured has other insurance covering the loss. Construing the contract as a whole, we conclude that the clause in question was intended not to provide for automatic termination, but to allow the company to elect not to renew the policy at the end of the policy term, even without notice to the insured, if the insured is covered by another policy. To hold otherwise would produce an unreasonable result and would tend to render other provisions in the policy, such as the "Other Insurance" provision, meaningless.

■ Travelers claims it was released from its U.M. liability to the Lucases because they settled with Aetna Insurance Company, the ambulance insurance carrier. A policy clause provides that:

This policy does not apply under Part IV: ... (b) to bodily injury to an insured with respect to which such insured, his legal representative or any person entitled to payment under this coverage shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor; ...

Texas courts have upheld such a term as a means of protecting the carrier's subrogation rights. *Ford v. State Farm Mut. Auto. Ins. Co.*, 550 S.W.2d 663 (Tex.1977); *Dairyland County Mut. Ins. Co. v. Roman*, 498 S.W.2d 154 (Tex.1973). How-

ever, when a stipulation is made or evidence is presented which shows the insured of the settling carrier was not negligent, the U.M. carrier has not lost its subrogation rights, because it has no cause of action against the insured of the settling carrier. *See Castorena v. Employers Cas. Co.*, 526 S.W.2d 680 (Tex.Civ.App.—El Paso 1975, writ ref'd n.r.e.); *McClelland v. United Serv. Auto. Ass'n.*, 525 S.W.2d 271 (Tex.Civ.App.—Beaumont 1975, writ ref'd); *Texas Pac. Indem. Co. v. Building Material Dist., Inc.*, 508 S.W.2d 488 (Tex.Civ.App. —Waco 1974, writ ref'd n.r.e.). In this case, Travelers and the Lucases stipulated that the drunk driver was negligent, and the jury failed to find the ambulance driver negligent. Travelers had no cause of action against the non-negligent ambulance driver and lost no subrogation rights when the Lucases accepted payment from Aetna; thus, the provision was inapplicable to the situation here.

The Lucases were covered by U.M. protection of $10,000.00 under each policy. The ambulance carried U.M. coverage through Aetna, which paid the Lucases $5,000.00 each, the maximum benefit available to them under the policy. The trial court awarded Travelers an offset for this amount. Travelers complains, however, that because Aetna provided some benefits to the Lucases, Travelers' liability should therefore be reduced by Aetna's $5,000.00 payment, making Travelers liable for a maximum of $5,000.00 under a $10,000.00

coverage.[2] The Lucases' U.M. claims exceeded the policy limit after deducting Aetna's payment.

■ An insurance company may not reduce its U.M. liability to an amount less than the policy limit by crediting to itself an amount paid under another policy. *American Motorists Ins. Co. v. Briggs*, 514 S.W.2d 233 (Tex.1974); *American Liberty Ins. Co. v. Ranzau*, 481 S.W.2d 793 (Tex. 1972). The Lucases are entitled to recover the U.M. coverage limits to the extent it does not exceed their actual damages.

■ Similarly, Travelers urges the P.I.P. coverage is limited to $1,250.00 on a $2,500.00 coverage because the Lucases own a second auto insurance policy.[3] While Tex.Ins.Code Ann. art. 5.06–3(b) (Vernon 1981) provides that P.I.P. "shall not exceed $2,500.00 for all benefits, in the aggregate, for each person," we believe the aggregate amount refers to recovery under any *one* policy. *Creighton v. Fidelity & Cas. Co. of New York*, 581 S.W.2d 815 (Tex.Civ.App.—Fort Worth 1979, no writ). A single multi-car policy providing for P.I.P. benefits cannot be increased by multiplying the P.I.P. coverage by the number of cars insured under one policy. *Guerrero v. Aetna Cas. & Sur. Co.*, 575 S.W.2d 323 (Tex.Civ.App.—San Antonio 1978, no writ). However, involved in this case are two separate policies covering the same cars. The P.I.P. benefits are not stacked,

2. The policy provides:
27. Other Insurance. With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.
Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable

for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.

3. The policy provides:
28. Other Insurance. If there is other personal injury protection insurance against a loss covered by the provisions of Part VI, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability ... of all valid and collectible personal injury protection insurance; provided, however, the insurance afforded hereunder shall be excess over any other valid and collectible personal injury protection insurance available to the named insured ....

736

but the insurer is required to pay up to the limit under each policy.

Travelers contends it is entitled to an offset on the U.M. benefits for payments it made for medical expenses under the P.I.P. coverage. We disagree. The insurer is not entitled to such an offset. *Dabney v. Home Ins. Co.*, 643 S.W.2d 386 (Tex.1982).

The judgment is affirmed.