David L. MONROE and Karen D.
Miedrich f/k/a Karen Miedrich
Monroe, Appellants,

v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,
Appellee.

No. 01–92–00657–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 17, 1992.

Rehearing Denied Jan. 7, 1993.

Tom F. Coleman, Houston, for appellants.

Paul E. Anderson, Jr., James F. Keegan, Houston, for appellee.

Before SAM BASS, COHEN and HEDGES, JJ.

## OPINION

SAM BASS, Justice.

We affirm a take-nothing judgment against appellants.

On December 5, 1990, six-year-old Brittany Louise Monroe and appellants, her parents David and Karen, were leaving school after a Christmas program. Karen drove her 1984 Nissan to David's 1981 Volkswagen. David and Brittany crossed the street to his car. As David was unlocking the door, Brittany took off her sweater, went back to Karen's car, and threw the sweater to Karen. Brittany started back to David's car. She had taken about two steps when Errol Wagenhauser, Jr. drove between the cars, striking and killing her. Neither David, Karen, or either of their two vehicles was hit.

Government Employees Insurance Company (GEICO) paid $300,000 to appellants (the Monroes). Three hundred thousand dollars was the stated "per accident" limit of bodily injury liability under the underinsured motorist coverage in the automobile policy.

Appellants sued GEICO seeking a declaratory judgment that the applicable policy limit was $600,000, and seeking an additional $300,000. On cross-motions for summary judgment, the trial court granted judgment for GEICO.

Appellants contend the trial court should have granted their summary judgment and denied GEICO's. They argue

that, despite its express limit of $300,000 per accident, the total amount recoverable under the policy is $600,000 because they should be permitted to "stack" the coverages.[1] They say intra-policy stacking of the coverages on their two cars is permitted because: (1) the policy should be construed as two separate policies because there are "separate Declaration Sheets ... used in the policy" concerning each vehicle; (2) the policy language is ambiguous and should be construed against GEICO; and (3) "policy considerations demand it." Appellants' first and second arguments are interdependent, because it is only where there is uncertainty as to the meaning of a contract or other written instrument that rules of construction are to be applied. *Barnett v. Aetna Life Insurance Co.*, 723 S.W.2d 663, 665 (Tex.1987); *General Am. Indem. Co. v. Pepper*, 161 Tex. 263, 339 S.W.2d 660, 661 (1960).

Appellants' policy provides, in pertinent part, as follows:

PART C

UNINSURED/UNDERINSURED

MOTORISTS COVERAGE

INSURING AGREEMENT

We will pay damages which a **covered person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of bodily injury sustained by a **covered person** ... caused by an accident.

. . . . .

"Covered person" as used in this Part means:

1. You[2] or any **family member**;[3]

2. Any other person **occupying**[4] **your covered auto**;[5]

3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

. . . . .

EXCLUSIONS

A. We do not provide Uninsured/Underinsured Motorists Coverage for any person:

1. For bodily injury sustained while **occupying**, or when struck by, any motor vehicle ... of any type owned by you or any **family member** which is not insured for this coverage under this policy.

. . . . .

LIMIT OF LIABILITY

The limit of liability shown in the Declarations for "each person" for bodily injury liability is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for "each person", *the limit of liability shown in the Declarations for "each accident" for bodily injury liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident ....*

1. " 'Stacking' refers to the ability of the insured, when covered by more than one insurance policy, to obtain benefits from a second policy on the same claim when recovery from the first policy alone would be inadequate.... 'Intra-policy stacking is the aggregation of the limits of liability for uninsured-motorist coverage of each car covered in one policy, whereas inter-policy stacking involves the aggregation of coverage under more than one policy.' "

*Upshaw v. Pleasant*, 812 S.W.2d 353, 354 n. 1 (Tex.App.—San Antonio 1991) (citing *United Serv. Auto. Ass'n v. Hestilow*, 754 S.W.2d 754, 755 n. 1 (Tex.App.—San Antonio 1988), *aff'd*, 777 S.W.2d 378 (Tex.1989)), *aff'd sub nom. Upshaw v. The Trinity Companies*, 842 S.W.2d 631 (Tex.1992).

2. The policy provides that, "[t]hroughout this policy, 'you' and 'your' refer to:
1. The 'named insured' shown in the Declarations, and
2. The spouse if a resident of the same household.

3. In the policy, "family member" is defined as any person related to the named insured by blood, marriage, or adoption resident in the same household.

4. "Occupying" in the policy means "in, upon, getting in, on, out or off."

5. In the policy, the definition of "your covered auto" includes any vehicle shown in the policy declarations, and several other categories not relevant here.

*This is the most we will pay* regardless of the number of:

1. **covered persons;**

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

(Italic emphasis added; bold emphasis in original.) The relevant provisions of the Declarations portion of the policy state the following separate limits and premiums for appellants' two vehicles:

PAGE 2 OF 3

[Auto # 1] 84 NISSAN ...

| COVERAGES | LIMITS | PREMIUM |
| --- | --- | --- |
| ... | | |
| C: UNINSURED/UNDERINSURED MOTORISTS COVERAGE BODILY INJURY LIABILITY EACH PERSON/EACH ACCIDENT | $300,000/$300,000 | $37.00 |
| ... | | |

PAGE 3 OF 3

[Auto # 2] 81 VOLKS ...

| COVERAGES | LIMITS | PREMIUM |
| --- | --- | --- |
| ... | | |
| C: UNINSURED/UNDERINSURED MOTORISTS COVERAGE BODILY INJURY LIABILITY EACH PERSON/EACH ACCIDENT | $300,000/$300,000 | $36.00 |

---

In *Westchester Fire Insurance Co. v. Tucker*, 512 S.W.2d 679 (Tex.1974), the supreme court construed policy provisions that were identical to those at issue here, in all respects that are material here. *See* 512 S.W.2d at 681 n. 1:

1. The first quoted paragraph of appellants' policy is parallel to the paragraph in the *Tucker* policy labeled "COVERAGE J.—FAMILY PROTECTION (DAMAGES FOR BODILY INJURY)."

2. The definition of "covered person" under appellants' policy parallels the definition of "insured" under Part IV of the *Tucker* policy.

3. The exclusion under appellants' policy quoted above and the exclusion quoted in *Tucker* are parallel.

4. The quoted "LIMITS OF LIABILITY" paragraph of the *Tucker* policy and the first "LIMIT OF LIABILITY" paragraph of appellants' policy are likewise parallel.

5. The declarations sections of the *Tucker* policy and of appellants' policy both set out separate premiums on each owned automobile for uninsured motorist coverage, with stated limits of liability per person and per accident for that coverage.

The one material difference is the *Tucker* policy contained no language like that in appellants' policy which begins, "This is the most we will pay ...".

In *Tucker*, two consolidated cases were before the supreme court. 512 S.W.2d 679. In each of them, an insured was injured in a collision with an uninsured motorist. *Id.* Each insured was driving an owned automobile, one of two or more listed in the policy declarations and for which separate premiums for uninsured motorist coverage had been paid. *Id.* The supreme court held, first, "the provisions governing the

limit of the company's liability for damages caused by an uninsured motorist are clear and unambiguous." 512 S.W.2d at 682. It reasoned, simply and straightforwardly, that:

> Part IV of the policy [the uninsured motorist provisions] stipulates that the limit of liability for family protection stated in the declarations as applicable to each person is the limit of the company's liability for all damages sustained by one person as the result of any one accident. Upon turning to the declarations, we find that the stated limits of liability are $10,000.00 for each person and $20,000.00 for each accident. In our opinion the terms of the policy governing family protection coverage make it quite clear that $10,000.00 is the upper limit of the company's liability to any one person for the damages suffered in any one accident.

512 S.W.2d at 683. The supreme court next discussed its decision in *American Liberty Insurance Co. v. Ranzau*, 481 S.W.2d 793 (Tex.1972), cited by appellants to support their position:

> In *Ranzau*, as here, it was contended that the payment of increased premium charges for additional vehicles under the uninsured motorist coverage operated to multiply the basic coverage. Here, as there, we find nothing to indicate that the additional premium charge or charges were paid or received for that purpose, and all the policy provisions point to the contrary conclusion. Here, as in *Ranzau*, we hold that the stated limits of the uninsured motorist coverage are not subject to stacking or pyramiding under the facts of these cases.

*Tucker*, 512 S.W.2d at 684. *Ranzau* did not permit intra-policy stacking.

Appellants rely on the statement in *Ranzau* that, "there was consideration for the extra premium of three dollars upon the addition of the second owned automobile in the protection afforded Ranzau if an insured, while using the second owned automobile, suffered damages at the hands of an uninsured motorist." Their argument begs the question of what "protection" the extra premium bought.

■ Uninsured motorist coverage entitles the named insured and family members to basic protection in the stated policy limits while occupying a non-owned automobile or while not occupying an automobile. Upon the declaration of one or more owned automobiles and the payment of an additional premium, the named insured and family members become entitled to basic protection in the stated policy limits while occupying any of those owned automobiles as well. *See Tucker*, 512 S.W.2d at 684. Each such additional premium serves to expand the range of accident situations in which the named insured and family members will have protection, rather than increasing the amount of protection in any given accident situation. Each such additional premium *broadens* the protection, but does not *deepen* it.

If *Tucker* controls, the trial court's summary judgment for GEICO is correct. Appellants assert that *Tucker* does not control here, for three reasons.

First, appellants argue, although the policy provides that $300,000 is the most GEICO will pay regardless of the number of *covered persons, number of vehicles involved in the auto accident, or the number of vehicles or premiums shown in the declarations*, the policy should be construed as two separate policies because there are "separate Declaration Sheets ... used in the policy" concerning each vehicle.[6] The total amount recoverable under the policy is, they reason, therefore $600,000. Appellants' argument is bottomed upon the fact the policy fails expressly to

---

6. Although the declarations relating to appellants' first and second vehicles and the respective premiums paid for those vehicles appear on different "sheets" or pages, the declarations section of the policy, on our reading, is a single, unitary whole consisting of three pages, and not a set of "separate declaration sheets" for each vehicle. Only the first page identifies the whole section as the "Personal Automobile Policy Endorsement Declarations," and the pages themselves are numbered "Page 1 of 3," "Page 2 of 3," and "Page 3 of 3." Though it has little to no perceptible support, we accept, for the sake of argument, appellants' assertion that there are two clearly distinct and separate documents.

say "$300,000 is the most GEICO will pay regardless of the *number of declaration sheets* used in the policy." They contend that that failure, coupled with the asserted use of "separate declaration sheets," creates an ambiguity that in turn warrants a construction, against GEICO and for appellants, that the policy is effectively two policies and the total amount recoverable is $600,000.

In *Allstate Insurance Co. v. Zellars*, 462 S.W.2d 550 (Tex.1970), the supreme court addressed a contention legally indistinguishable from appellants' argument. Zellars collided with another vehicle while driving a truck belonging to his employer. *Id.* at 553. His Allstate insurance policy provided coverage for property damage liability stemming from operation of a non-owned vehicle. *Id.* Zellars and Allstate disagreed about the dollar limit of that coverage.

Zellars had been issued a "Renewal Certificate" for each of his two cars; each stated the limit of his coverage for property damage liability stemming from operation of a non-owned vehicle was $5,000 per occurrence. *Id.* at 554. The opinion does not further describe these certificates or set out their content, but from this description it appears there were two clearly distinct and separate documents.

Zellars contended "Allstate, by making two separate premium charges for Zellars' two automobiles, ha[d] in essence issued two separate policies of insurance." *Id.* at 555. The trial court was persuaded the policy was ambiguous because there were two renewal certificates, and resolved the ambiguity as Zellars suggested; the trial court ruled Zellars had two policies, and ordered Zellars was entitled to coverage from Allstate for $10,000. *Id.* at 552. The El Paso Court of Appeals was likewise persuaded, and affirmed. *Id.* The supreme court rejected Zellars' contention, and reformed the judgment to declare Allstate's liability for property damage to be limited to $5,000. *Id.* at 556.

Next, appellants argue the supreme court's decision in *Stracener v. United Services Automobile Association*, 777 S.W.2d 378 (Tex.1989) mandates the recovery they seek here. In *Stracener*, two companion cases were before the supreme court that involved inter-policy stacking, not intra-policy stacking; the opinion states the insurance policies in question there were separate policies. *See* 777 S.W.2d at 379 and 380 (referring to policies as "separate policies" three times and setting out names of the different insurers on one set of policies). The supreme court reversed this Court's decision that inter-policy stacking was prohibited, and affirmed the San Antonio Court of Appeals' contrary decision in the other case.

We find no support in *Stracener* for appellants' position. Moreover, *Stracener* offers some support for appellees' position, even though it is an inter-policy stacking case. First, *Stracener* relied upon the portion of the *Ranzau* opinion addressing inter-policy stacking, without criticizing the *Ranzau* prohibition on intra-policy stacking. Second, in construing subsection (5) and other portions of article 5.06–1 of the Texas Insurance Code not relevant here, the court quoted the following language from *American Motorists Insurance Co. v. Briggs*, 514 S.W.2d 233 (Tex.1974): "If coverage exists under *two or more policies*, liability on the policies is joint and several to the extent of the plaintiff's actual damages, *subject to the qualification that no insurer may be required to pay in excess of its policy limits.*" *Stracener*, 777 S.W.2d at 383 (emphasis added) (quoting *Briggs*, 514 S.W.2d at 236). The language of subsection (5), which the *Stracener* court interpreted as imposing that latter qualification, states "uninsured motorist coverage shall provide for payment to the insured of all sums which he shall be legally entitled to recover as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage in an amount *up to the limit specified in the policy* [.]" (Emphasis added.) Thus, when the *Stracener* decision said "no insurer may be required to pay in excess of its policy limits," the policy limits were those specified—i.e., expressly stated—in the policy. *Stracener* decided those specified limits were to be given effect, so

that under any given single policy the insured may not recover more than the expressly stated limit; and the insured may recover a greater total sum only where there are two or more policies, each with its own separately specified limit, and only by stacking those limits. Accordingly, the *Stracener* court's observation that its construction of article 5.06–1(5) was "consistent with *Ranzau*," 777 S.W.2d at 383, noted its consistency with the *Ranzau* court's *decision to deny intra-policy stacking*, as well as its decision to permit inter-policy stacking.

The third and final reason appellants offer to show *Tucker* does not control here is a factual distinction between the two cases. In *Tucker*, only one of the two or more automobiles listed in the declarations was involved in each of the accidents; in contrast, here both David's and Karen's cars were, they assert, "involved" in the accident within the meaning of the policy. In their brief, appellants purport to distinguish two courts of appeals cases in which the insureds sought intra-policy stacking of uninsured motorist coverages when two declared insured owned vehicles were involved in the accident.

In *Jones v. Standard Fire Insurance Co.*, 825 S.W.2d 242 (Tex.App.—Fort Worth 1992, writ denied), the insured had uninsured motorist coverage on his two automobiles, which were both covered under one policy. 825 S.W.2d at 243. The policy language, set forth in the opinion was in all material respects identical to the issue here. *Id.* Jones argued *Tucker* was distinguishable because in his accident both covered vehicles were involved, unlike the *Tucker* accident, which involved only one of the vehicles covered in the policy. 825 S.W.2d at 244. The court summarily rejected that distinction, and denied intra-policy stacking. *Id.* The Monroes purport to distinguish *Jones* on the basis the *Jones* opinion did not reveal whether the "declaration sheets" of the policy there were physically separate, or combined into one as in the *Tucker* policy. Because of *Zellars*, this distinction is immaterial; does not warrant a different result than in

*Jones;* and does not permit a different result than in *Tucker.*

At the time this case was briefed, the supreme court had granted writ on the second court of appeals case appellants address; its decision was issued before oral argument in this case. *Upshaw v. The Trinity Companies*, 842 S.W.2d 631 (Tex. 1992), involved only one of several vehicles insured under a single, multi-vehicle insurance policy. 842 S.W.2d at 632. The supreme court construed policy provisions that were identical to those at issue here, in all respects that are material here. On the basis of *Ranzau* and *Tucker*, *inter alia*, and notwithstanding *Stracener*, the court denied intra-policy stacking, saying specifically that the language of that policy was unambiguous, and that no identified public policy warranted a different result, 842 S.W.2d at 632, 635.

Appellants have raised a third and final argument, that the total amount recoverable under the policy is $600,000 because "[public] policy considerations demand it." Appellants present no argument or authority in support of this final assertion. The *Zellars, Ranzau, Tucker, Upshaw,* and *Jones* cases comprise a monolithic body of Texas caselaw contrary to appellants' position. Thus, we need not address that argument separately.

Since *Zellars*, the supreme court and the courts of appeals have time and again rejected the policy interpretation appellants urge. We likewise reject it.

We affirm the judgment.