Regan KELLEY, Appellant,

v.

PROGRESSIVE COUNTY MUTUAL
INSURANCE CO., Appellee.

No. 10–06–00263–CV.

Court of Appeals of Texas,
Waco.

Dec. 12, 2007.

Company and Regan Kelley regarding the stacking of insurance policies. While riding her horse, Kelley suffered injuries as a result of being struck by a motorist. Kelley made a claim with Progressive for underinsured benefits under a policy issued to her father. Kelley received $100,000 from the motorist's insurance carrier, and Progressive paid the policy limits of $500,025 to Kelley. Kelley requested further payment under an alleged second policy.[1] When Progressive refused to make further payments, Kelley sued Progressive for breach of contract and Insurance Code violations. Progressive sued Kelley seeking a declaratory judgment that it was required to pay the maximum amount under only one policy and that stacking was prohibited. These two suits were consolidated. Progressive and Kelley filed competing summary judgment motions. The trial court granted Progressive's motion, denied Kelley's, and dismissed the case. In two issues, Kelley argues that the trial court erred by granting Progressive's motion and denying her motion because: (1) Progressive issued two separate insurance policies; and (2) the two policies may be stacked. We reverse and render in part and reverse and remand in part.

Jay B. Goss, Bruchez & Goss, Bryan, for appellant.

Mark Ross Lapidus, Burck, Lapidus & Lanza, PC, Houston, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## MEMORANDUM OPINION

FELIPE REYNA, Justice.

This appeal involves a dispute between Progressive County Mutual Insurance

## STANDARD OF REVIEW

We review a trial court's summary judgment *de novo*. *See Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). When, as here, competing motions for summary judgment are filed and one is granted and one denied, the appellate court should determine all questions presented and should render the judgment the trial court should have rendered. *Tex. Workers Comp. Commn. v. Patient Advocates of Tex.,* 136 S.W.3d 643, 648 (Tex.

---

1. Kelley alleges that she has suffered over $1,000,000 in damages.

2004); *Am. Hous. Found. v. Brazos County Appraisal Dist.*, 166 S.W.3d 885, 887 (Tex.App.Waco 2005, pet. denied). To prevail on a traditional summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex.2005). We will "consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion." *Goodyear Tire Rubber Co. v. Mayes*, 236 S.W.3d 754 (Tex., 2007) (citing *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex.2006) and *Wal–Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex.2006)). We must determine "whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented." *Mayes*, 236 S.W.3d at 755 (citing *Spates*, 186 S.W.3d at 568 and *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex.2005)).

## NUMBER OF POLICIES

In her first issue, Kelley contends that Progressive issued two "separate and distinct policies" that she is entitled to stack.

"Stacking" constitutes the "aggregation of multiple insurance coverages to cover the insured's loss." *Upshaw v. Trinity Cos.*, 842 S.W.2d 631, 632 n. 1 (Tex.1992). An insured may "stack" multiple insurance policies providing for uninsured/underinsured motorists coverage. *See Stracener v. United Servs. Auto. Asso.*, 777 S.W.2d 378, 382–83 (Tex.1989); *see also Am. Motorists Ins. Co. v. Briggs*, 514 S.W.2d 233, 236 (Tex.1974).

Progressive issued a policy to James Kelley to insure four vehicles. Progressive later insured a fifth vehicle on a separate declarations page. These two documents bear different coverage dates and policy numbers, require payment of different premiums, and insure different vehicles and drivers. According to the affidavit of Debra Henry, Progressive's litigation underwriting specialist, Progressive's computer software provides space for only four vehicles on a declarations page. In order to add a fifth vehicle, Progressive was required to split the policies and issue a second declarations page with a different policy number. Henry stated that Progressive did not charge a separate policy fee as it would have been entitled to do had two policies been issued and gave a multi-car discount for the fifth vehicle, which it would not have done had it issued a separate policy. Thus, Progressive maintains that, even though there are two policy numbers and two declarations pages, only one policy exists.

Progressive relies on *Allstate Insurance Co. v. Zellars* and *Monroe v. Government Employees Insurance Co.* to support its position. In *Zellars*, Allstate issued separate renewal certificates in the amount of $5,000 for each of Zellars' vehicles and charged separate premiums for each vehicle. *See* 462 S.W.2d 550, 554 (Tex.1970). The Supreme Court rejected the contention that this amounted to the issuance of two insurance policies. *Id.* at 555. In *Monroe*, the First Court, in reliance on *Zellars*, rejected the contention that a "policy should be construed as two separate policies because there are 'separate Declaration Sheets ... used in the policy' concerning each vehicle."[2] 845 S.W.2d

---

2. The First Court accepted this contention for the sake of argument, but noted that the separate declaration sheets appeared to be a single document. *See Monroe v. Gov't Employees Ins. Co.*, 845 S.W.2d 394, 398 n. 6 (Tex. App.-Houston [1st Dist.] 1992, writ denied).

**4** ■■■■■■■■■

394, 397–99 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

We agree that separate premiums and declarations pages do not, standing alone, establish the existence of two policies. *See Zellars*, 462 S.W.2d at 555; *see also Monroe*, 845 S.W.2d at 397–99. However, neither *Monroe* nor *Zellars* discussed the existence of separate *policy numbers*. Moreover, Progressive's "Product & Underwriting Guide," which provides that "policies for five or more vehicles" must be "split" into a primary policy and a secondary policy, indicates the existence of separate policies:

> ProRater will prompt you to indicate whether it is for the *second policy* of a "5 + car" policy. Answering "Yes" to this question will generate a multi-car discount, and will prevent a policy fee and installment fee from being charged on the *second policy*. Only answer "Yes" when quoting the *second policy*. The primary policy should be answered "No."
>
> Named Insureds must be the same on the *policies* to match the market classification between the *policies*.
>
> Named Insured's spouse (if applicable) will need to be listed on *both policies*.
>
> If a driver is to be excluded from coverage, the excluded driver should be listed and excluded on *each policy*. A signed exclusion is required for *each policy*. Financial Responsibility (FR) will be ordered for the Named Insured on *each policy*.
>
> ProRater will determine the market classification for *each policy*. The market classification on the primary policy is the true market classification since all drivers and their complete driving records are included. The market classifi-

cation on the secondary policy may be different (more favorable) since only the Named Insured, spouse (if applicable) and non-chargeable incidents are listed. The "5 + Car" Bill Plan does not charge installment fees or a policy fee. It also allows multi-car discount *even when the secondary policy has only one car*.

> If a customer wants to add a fifth vehicle to the policy mid-term, you must upload a second application. Indicate in ProRater that the application is for a "5 + Car" policy. Quote the secondary policy on ProRater using the current rate revision. The existing policy may be in a different rate revision.
>
> If limits on the existing Progressive policy need to be changed, quote the *new policy* with revised limits.

(Emphases added).[3]

Based on these guidelines, it appears that Progressive treats the primary and secondary policies as not one, but two separate policies with separate policy numbers. The declarations pages do not reference each other or appear to be part of a single document. Accordingly, we cannot say that Progressive issued only one policy of insurance. We sustain Kelley's first issue.

## "OTHER INSURANCE" PROVISION

In her second issue, Kelley argues that the two policies may be stacked and that a provision in the policy prohibiting stacking violates public policy.

■■■■ Policy provisions are "invalid if they are inconsistent with express statutory requirements or purposes." *Mid–Century Ins. Co. v. Kidd*, 997 S.W.2d 265, 271–72 (Tex.1999). The uninsured/underinsured motorist statute applies to situations

---

3. Progressive attached an excerpt from its "Product & Underwriting Guide" to its response to Kelley's motion for summary judgment.

in which a party is "legally entitled to recover from the person responsible for the accident but is unable to do so." *Progressive County Mut. Ins. Co. v. Sink,* 107 S.W.3d 547, 554 (Tex.2003). The statute is intended to protect "conscientious motorists from 'financial loss caused by negligent financially irresponsible motorists.'"[4] *Stracener,* 777 S.W.2d at 382. It is "designed to place the injured claimant in a position as though a financially irresponsible motorist had been insured." *Jankowiak v. Allstate Prop. & Cas. Ins. Co.,* 201 S.W.3d 200, 210 (Tex.App.-Houston [14th Dist.] 2006, no pet) (citing *Kidd,* 997 S.W.2d at 272). The statute must be "construed, liberally to give full effect to the public policy which led to its enactment." *Stracener,* 777 S.W.2d at 382. A policy provision frustrates the statute's intended purpose by "limit[ing] the possibility that an injured insured can recover actual damages" or reducing protection "below the minimum [statutory] limits." *Id.* at 383; *Kidd,* 997 S.W.2d at 270, 276.

Progressive's policies state that it "will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle." A vehicle is underinsured where "its limit of liability" is insufficient to "pay the full amount the covered person is legally entitled to recover as damages" or "has been reduced by payment of claims to an amount which is not enough to pay the full amount the covered person is legally enti-

tled to recover as damages." The policies also contain a "Two or More Auto Policies" provision:

> If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under one policy.

Citing *Fidelity & Casualty Co. v. Gatlin, American Liberty Insurance Co. v. Ranzau, Stracener,* and *Briggs,* Kelley argues that this clause is an "other insurance" provision that "contravenes the purpose and intent of the UM Statute and is contrary to public policy."[5]

In *Gatlin,* Margaret Gatlin was killed when the vehicle in which she was riding, owned by Mrs. James W. Talley, was struck by an uninsured motorist. *See* 470 S.W.2d 924, 925 (Tex.Civ.App.-Dallas 1971, no writ). Talley carried insurance with Republic Insurance Company, and Margaret's husband carried insurance with Fidelity & Casualty Company. *Id.* Fidelity argued that Gatlin could not recover under its policy "because of the 'pro rata clause of the Republic policy' and the 'excess insurance' clause" in Fidelity's policy. *Id.* at 926. The Dallas Court disagreed and held:

> (1) that our uninsured motorist statute sets a minimum amount of coverage but it does not place a limit upon the total amount of recovery so long as that

---

**4.** The uninsured motorist statute was enacted in 1967 to provide uninsured protection and amended in 1977 to provide both uninsured and underinsured protection. *See* Act of May 3, 1967, 60th Leg., R.S., ch. 202, § 1, 1967 Tex. Gen. Laws 448, *amended by* Act of May 6, 1977, 65th Leg., R.S., ch. 182, § 1, 1977 Tex. Gen. Laws 370, *repealed by* Act of May 24, 2005, 79th Leg., R.S., ch. 727, § 18, 2005 Tex. Gen. Laws 1752, 2186–87 (current version at TEX. INS.CODE ANN. §§ 1952.101–1952.110 (Vernon 2007)). These provisions

were repealed effective April 1, 2007. *See* Act of May 24, 2005, 79th Leg., R.S., ch. 727, § 18, 2005 Tex. Gen. Laws 1752, 2186–87. Because this case was filed in 2005, we apply the law in effect at that time.

**5.** Kelley also relies on a Montana case. *See Hardy v. Progressive Specialty Ins. Co.,* 315 Mont. 107, 67 P.3d 892 (2003). Because *Hardy* addresses a Montana statute and Montana public policy, we do consider it.

amount does not exceed the amount of actual loss; (2) that where the loss exceeds the limits of one policy, the insured may proceed under other available policies; (3) and that where uninsured motorist coverage has been provided, we cannot permit an insurer to avoid its statutorily imposed liability by its insertion into the policy of a liability limiting clause which restricts the insured from receiving the benefit of that coverage. *Id.* at 928.

In *Ranzau*, Paula Ranzau suffered injuries when the vehicle in which she was riding, owned by Victor Raphael, was struck by an uninsured motorist. *See* 481 S.W.2d 793, 794–95 (Tex.1972). Raphael carried insurance with USAA, and Paula's father carried insurance with American Liberty. *Id.* at 795. USAA paid the policy limits to Paula, but American Liberty refused payment based on an "other insurance" provision in its policy. *Id.* The Supreme Court held that a provision may not " 'limit the recovery of actual damages caused by an uninsured motorist:' "

> The statute does not expressly or by any reasonable inference limit *the recovery* of actual damages to the statutory limits of required coverage for one policy in circumstances where the conditions to liability are present with respect to two policies with different insurers and insureds. This is the effect, however, of "other insurance" clauses, whether in the form of "pro-rata," "excess insurance," "excess-escape" or like clauses; one or the other insurer escapes liability, or both reduce their liability.

*Id.* at 797. The Court further held that "to permit one policy, or the other, to be reduced or rendered ineffective by a liability limiting clause would be to frustrate the insurance benefits which the statute sought to guarantee and which were purchased by the respective insureds." *Id.*

In *Briggs*, Thomas and JoJean Briggs suffered injuries while riding in a vehicle belonging to their employer. *See* 514 S.W.2d at 234. The employer carried insurance with International Insurance Company and the Briggs carried insurance with American Motorists Insurance Company. *Id.* Both policies contained "other insurance" provisions. *Id.* The Briggs settled with International and won a judgment against American. *Id.* The Supreme Court held:

> [W]henever coverage exists under the uninsured motorist endorsement, the person covered has a cause of action on the policy for his actual damages to the extent of the policy limits without regard to the existence of other insurance. If coverage exists under two or more policies, liability on the policies is joint and several to the extent of plaintiff's actual damages, subject to the qualification that no insurer may be required to pay in excess of its policy limits.

*Id.* at 236.

In *Stracener*, the Supreme Court considered two cases involving the stacking of underinsured benefits. *See* 777 S.W.2d at 379–81. In the first case, LaDonna Stracener was killed when the car in which she was riding was struck by a vehicle driven by Robert Lampe. *Id.* at 380. Stracener was covered by four insurance policies issued by different insurers. *Id.* All the insurers settled, except USAA. *Id.* The First Court held that the Straceners could not "combine or 'stack' the limits of underinsured motorist coverage under four separate insurance policies." *Id.* at 379. In the second case, Scott Hestilow was injured when the car he was driving was struck by a vehicle driven by Alvino Casarez. *Id.* at 380. A settlement was reached with Casarez's insurance carrier. *Id.* Scott's parents each carried a policy with USAA. *Id.* The Fourth Court held that

"coverage may be stacked," but the "total coverage available to the beneficiary should be reduced by the limit of the tort-feasor's liability coverage." *Id.* at 379. Both *Stracener* and *Hestilow* involved clauses stating that the "limit of liability shall be reduced by the amount recovered or recoverable from, or on behalf of the owner or operator of an underinsured motor vehicle." *Id.* at 380. The Supreme Court reversed *Stracener* and affirmed *Hestilow,* holding that "clauses in insurance policies which are not consistent with and do not further the purpose of article 5.06–1 [the uninsured/underinsured motorist statute] are invalid." *Id.* at 384.

Progressive attempts to distinguish *Stracener, Briggs, Ranzau,* and *Gatlin,* arguing that they do not address "two policies from the *same* insurer issued to the *same* named insured with injuries based on one accident." Progressive points to language in *Ranzau* stating that the uninsured/underinsured statute does not limit the recovery for actual damages "where the conditions to liability are present with respect to two policies with *different insurers and insureds* " and that "other insurance" clauses allow *"one or the other insurer"* to escape or "reduce their liability." 481 S.W.2d at 797 (emphasis added).

We are not persuaded that this distinction affects our analysis. In *United Services Automobile Ass'n. v. Hestilow,* one of the cases addressed in *Stracener,* the San Antonio Court addressed a similar issue, holding that the fact that the "insurance carrier is the same for the two separate policies" is irrelevant because:

> This is no different than had one of the policies been issued by a different insurance carrier. By allowing USAA to offset against each of its policies the amount paid by the underinsured motorist's carrier, USAA would be receiving a double setoff, or a windfall. The insur-

ance company collected premiums on statutorily required insurance coverage. To permit it to deny recovery under one of its policies would mean it profited under the statute to the insured's detriment. Such cannot possibly have been the intention of the Legislature.

754 S.W.2d 754, 758–59 (Tex.App.-San Antonio 1988), *aff'd,* 777 S.W.2d 378 (Tex. 1989) (internal citations omitted). In *Travelers Indemnity Co. v. Lucas,* the Lucases suffered injuries when the ambulance in which they were riding was struck by an uninsured motorist. *See* 678 S.W.2d 732, 733 (Tex.App.-Texarkana 1984, no writ). The Lucases sought personal injury protection and uninsured motorist coverage under their two policies with Travelers. *Id.* Travelers paid the P.I.P. benefits under one policy, but refused to pay under the other policy. *Id.* at 733–34. The Texarkana Court held:

> An insurance company may not reduce its U.M. liability to an amount less than the policy limit by crediting to itself an amount paid under another policy. The Lucases are entitled to recover the U.M. coverage limits to the extent it does not exceed their actual damages.

*Id.* at 735 (internal citations omitted).

██ Neither are we convinced that it matters whether injuries arise out of "one accident." "Texas has traditionally permitted stacking of uninsured motorist coverage when different policies apply to the *same accident." Hestilow,* 754 S.W.2d at 757 (emphasis added). Furthermore, the statute expressly defines an "underinsured motor vehicle" in the context of a single accident:

> The term "underinsured motor vehicle" means an insured motor vehicle on which there is valid and collectible liability insurance coverage with limits of liability for the owner or operator which were originally lower than, or have been

reduced by payment of claims arising from the *same accident* to, an amount less than the limit of liability stated in the underinsured coverage of the insured's policy.

Act of May 6, 1977, 65th Leg., R.S., ch. 182, 1977 Tex. Gen. Laws 370, *repealed by* Act of May 24, 2005, 79th Leg., R.S., ch. 727, § 18, 2005 Tex. Gen. Laws 1752, 2186–87 (current version at TEX. INS.CODE ANN. § 1952.103 (Vernon 2007)) (emphasis added). In light of these authorities, we conclude that multiple policies may be stacked even though issued by the same insurer to the same insured for damages arising out of the same accident. *See Hestilow,* 754 S.W.2d at 757–59; *see also Lucas,* 678 S.W.2d at 735.

■ Progressive next argues that the "Two or More Auto Policies" provision does not: (1) "limit an insured's ability to recover an amount in excess of the policy limits" required by the statute; (2) "restrict the [statute's] effect;" (3) "render Progressive an excess insurer (as in 'other insurance' clauses) wherein the benefits paid to the insured are dependent upon the benefits received by the insured from a separate insurer;" or (4) give rise to the "uncertainties" of "other insurance" clauses as identified in *Stracener.*[6] *See* 777 S.W.2d 378 at 383 ("uncertainties" include the limits of underinsured motorist coverage, "the limits of the tortfeasor's liability insurance, the extent of damages suffered by any other persons who may have been involved in the same accident and the amount of any settlements made with the liability insurance carrier"). According to Progressive, this clause is an anti-stacking

provision that allows an insured to recover "actual damages in an amount for which the insured contracted with full disclosure of all terms of the applicable policy." Thus, Progressive argues that the underinsured limits available to Kelley "in the event of a single accident were disclosed at the time Mr. Kelley purchased the policies."

However, the proper inquiry is whether a provision limits the insured's ability to recover the extent of her actual damages incurred, not whether a provision limits an insured's "actual damages in an amount for which the insured *contracted.*" *See Stracener,* 777 S.W.2d at 383; *see also Briggs,* 514 S.W.2d at 236; *Ranzau,* 481 S.W.2d at 797. Regardless of whether it qualifies as an "other insurance" clause, an anti-stacking clause, or some other type of clause, the "Two or More Auto Policies" provision may not be used to frustrate the intended purpose of the statute. *See Stracener,* 777 S.W.2d at 384 ("clauses in insurance policies which are not consistent with and do not further the purpose of article 5.06–1 are invalid").

Although Texas law allows an insured to stack two or more policies to the extent of the insured's actual damages, Progressive's "Two or More Auto Policies" provision effectively prohibits the stacking of multiple policies. *See id.* at 382–83; *see also Briggs,* 514 S.W.2d at 236. In doing so, this clause improperly inhibits the injured insured's ability to recover actual damages. *See Ranzau,* 481 S.W.2d at 797. This frustrates the very purpose of the statute. *See Stracener,* 777 S.W.2d at

---

**6.** Progressive points out that the "Two or More Auto Policies" provision is separate from the "other insurance" clause in the policy. An "other insurance" clause is contained elsewhere in the policy:

> If there is other applicable liability insurance, we will pay only our share of the loss.

> Our share is the proportion that our limit of liability bears to the total of all applicable limits.

We accept that these two clauses are not one and the same.

383–84; *see also Jankowiak*, 201 S.W.3d at 212 (finding "limiting provisions" invalid to the extent they "provide less than the statutory minimum amount of coverage" or "limit a covered person's recovery of actual damages"). Accordingly, we conclude that the "Two or More Auto Policies" clause is inconsistent with the uninsured/underinsured motorist statute and is invalid. *See Stracener*, 777 S.W.2d at 384; *see also Jankowiak*, 201 S.W.3d at 212. Kelley's second issue is sustained.

### Conclusion

Because Kelley has established as a matter of law that Progressive issued two separate policies of insurance and that Progressive's "Two or More Auto Policies" provision violates public policy, we reverse the trial court's judgment and render judgment that Kelley is entitled to recover under the second policy to the extent of her actual damages. We remand this cause to the trial court for further proceedings consistent with this opinion.

Chief Justice GRAY dissents without a separate opinion.