TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





NO. 03-97-00448-CV





Jeane Laurence, Appellant


v.


State Farm Mutual Automobile Insurance Company, Appellee





FROM THE DISTRICT COURT OF BEXAR COUNTY, 285TH JUDICIAL DISTRICT

NO. 95-CI-16712, HONORABLE DAVID A. BERCHELMANN, JR., JUDGE PRESIDING 






 This appeal concerns the validity of a provision in an automobile insurance
policy reducing the amount of benefits paid under the policy's uninsured motorist (UM)
coverage by an amount paid to the insured under the policy's personal injury protection (PIP)
coverage. Appellant Jeane Laurence and appellee State Farm Mutual Automobile Insurance
Company each moved for summary judgment concerning the validity of the provision. After
determining that the PIP offset provision in Laurence's policy was valid and enforceable, the
trial court granted State Farm's motion for summary judgment effectively reducing Laurence's
UM benefits by the amount received under her PIP coverage. Laurence appeals. We will
affirm. 


BACKGROUND

 The facts of this case have been stipulated and are undisputed. 

 While riding as a passenger in a rental car, Laurence was involved in a hit-and-run accident that caused her actual damages of $14,325.23. These damages consisted of past
and future loss of wage-earning capacity, past and future physical pain and suffering, past and
future mental anguish, past and future physical impairment, pre-judgment interest, attorneys'
fees, and other damages that are or could be claimed in Laurence's original petition.

 When the accident occurred, Laurence was covered by an automobile insurance
policy issued by State Farm. Relevant to this appeal, the policy provided Laurence UM
coverage up to $50,000 per person and $100,000 per accident as well as PIP coverage up to
$5,000. The hit-and-run vehicle that caused the accident qualified as an "uninsured motor
vehicle" under the policy.

 After the accident, Laurence applied for and received $4,325.23 in PIP benefits. 
These benefits covered Laurence's reasonable and necessary medical expenses and eighty
percent of her lost wages. After receiving these PIP benefits, Laurence filed a claim for full
benefits under her UM coverage. As discussed below, the amount of benefits owed to
Laurence under her UM coverage forms the basis of the controversy between the parties.


THE CONTROVERSY

 Laurence and State Farm stipulated that Laurence was legally entitled to recover
$14,325.23 from the owner or operator of the uninsured motor vehicle. Therefore, Laurence
and State Farm agree that the total damages incurred by Laurence were $14,325.23. State
Farm, however, moved for summary judgment maintaining that pursuant to the insurance
policy in question, it was authorized to subtract from the amount of Laurence's actual damages
the $4,325.23 in PIP benefits already paid to Laurence under her PIP coverage. In support of
its position, State Farm directed the trial court to the following provision in the policy: 


In order to avoid insurance benefits payments in excess of actual damages
sustained, subject only to the limits set out in the Declarations and other
applicable provisions of this coverage, we will pay all covered damages not paid
or payable under any workers' compensation law, disability benefits law, any
similar law, auto medical expense coverage or Personal Injury Protection
Coverage. 



 In response to State Farm's motion for summary judgment, Laurence filed her
own motion for summary judgment claiming that the provision relied upon by State Farm was
invalid and thus unenforceable. Laurence argued that State Farm's attempt to offset her UM
coverage by the amount paid to her under her PIP coverage was not allowed by statute or
Texas Supreme Court authority. Laurence therefore claimed that State Farm owed her actual
damages of $14,325.23, in addition to the $4,325.23 she had already received under her PIP
coverage. 

 After considering the argument of each party, the trial court granted State
Farm's motion for summary judgment determining that the PIP offset provision was valid and
enforceable.


DISCUSSION The question presented in this case concerns the validity of the clause
contained in Laurence's automobile policy allowing State Farm to offset or deduct benefits paid
under Laurence's PIP coverage from Laurence's UM coverage.

 In her sole point of error, Laurence argues that the trial court erred in granting
State Farm's motion for summary judgment and denying her own motion for summary
judgment because the trial court erroneously determined that the provision offsetting PIP
benefits against her UM coverage was valid. Because the parties stipulated in the trial court to
the relevant facts, we review the cross-motions for summary judgment by determining all legal
questions presented. Guynes v. Galveston County, 861 S.W.2d 861, 862 (Tex. 1993). Each
party bears the burden of establishing that it is entitled to judgment as a matter of law. Id.;
Tex. R. Civ. P. 166a(c).

 In order to understand the issue presented in this case, we begin with a history
and overview of the statutes mandating that an insurer provide both UM coverage and PIP
coverage to an insured.


Uninsured Motorist Statute

 The concept of providing relief in the form of uninsured motorist insurance
coverage for persons injured in collision with cars driven by negligent uninsured motorists was
initially introduced in Texas in 1955. See Howard Nations, Statutory Damages Recovery:
Uninsured Motorist Statute, 18 S. Tex. L. J. 329 (1977). The insurance industry offered first-party coverage, on a voluntary basis, which allowed an insured to proceed against her own
insurance company for recovery of bodily injury damages which the insured sustained as a
result of the negligence of an uninsured motorist. Id. In 1967, the legislature removed the
insurers' option to voluntarily provide UM coverage and mandated that such coverage be
provided with the enactment of the Texas Uninsured Motorist Statute. See Act of May 3,
1967, 60th Leg., R.S., ch. 202, § 1, 1967 Tex. Gen. Laws 448 (Tex. Ins. Code Ann. art.
5.06-1, since amended). (1) 

 In pertinent part, the current statute provides:


No automobile liability insurance . . . shall be delivered . . . unless coverage is
provided . . . in at least the limits described in the Texas Motor Vehicle Safety-Responsibility Act, . . . for the protection of persons insured thereunder who
are legally entitled to recover damages from owners or operators of uninsured
or underinsured motor vehicles because of bodily injury, sickness, or disease,
including death, or property damage resulting therefrom.



Tex. Ins. Code Ann. art. 5.06-1 (West 1981) (emphasis added) ("Code"). It is clear from the
express terms of the statute that the purpose and policy of UM coverage is to protect insured
victims from the negligence of financially irresponsible motorists. See American Liberty Ins.
Co. v. Ranzau, 481 S.W.2d 793, 797 (Tex. 1972); Fidelity & Casualty Co. of New York v.
Gatlin, 470 S.W.2d 924, 927 (Tex. Civ. App.--Dallas 1971, no writ) (law was enacted to
benefit the innocent victim of a financially irresponsible motorist). The statute accomplishes
this purpose by placing the insurer in the shoes of the financially irresponsible tortfeasor as a
source of payment to the innocent victim. In addition, when it enacted the statute requiring
UM coverage, the legislature declared that the purpose of the statute was to protect motorists
against financial loss caused by negligent, financially irresponsible motorists. Act of May 3,
1967, 60th Leg., R.S., ch. 202, § 3, 1967 Tex. Gen. Laws 448, 449.


Personal Injury Protection Statute

 In 1973, the Legislature enacted a statute mandating that insurers provide
personal injury protection or PIP coverage as it is commonly called. Act of April 10, 1973,
63d Leg., R.S., ch. 52, § 1, 1973 Tex. Gen. Laws 90 (Tex. Ins. Code Ann. art. 5.06-3, since
amended). Article 5.06-3 provides in pertinent part:


No automobile liability insurance policy . . . shall be delivered . . . unless
personal injury protection coverage is provided therein or supplemental thereto.



Code art. 5.06-3(a) (West 1981).

 PIP coverage is a form of "no fault" insurance, which means that regardless of
fault, an insurer is required to provide PIP protection to the insured, members of the insured's
family, occupants of the insured's vehicle, and insured pedestrians in accidents arising out of
the use and operation of a motor vehicle. See Nations, 18 S. Tex. L. J. at 289. As expressed
in article 5.06-3(b), PIP coverage is provided to the insured as a quick source of funds for an
accident victim for immediate medical expenses and wage losses that are likely to result from
an accidental injury involving an automobile. Id. at 290. (2)

 A unique feature of the Texas PIP statute is its retention of the collateral source
rule with regard to other medical and wage continuation benefits that the recipient might be
entitled to receive. See Nations, 18 S. Tex. L. J. at 291. This feature is expressly found in
article 5.06-3(c) which provides: 


The benefits required by this Act shall be payable without regard to the fault or
non_fault of the named insured or the recipient in causing or contributing to the
accident, and without regard to any collateral source of medical, hospital, or
wage continuation benefits. An insurer paying benefits pursuant to this Act
shall have no right of subrogation and no claim against any other person or
insurer to recover any such benefits by reason of the alleged fault of such other
person in causing or contributing to the accident.



Code art. 5.06-3(c) (West 1981). Thus, under this provision, the insurer has no right to offset
other benefits the injured party might receive against PIP benefits. Moreover, as seen in the
last sentence of article 5.06-3(c), the insurer has no right of subrogation out of a recovery by
the insured or other covered party in a tort action brought against the negligent uninsured
motorist. With these statutes in mind, we turn to the issue presented.


Issue Presented

 We consider in this case whether the Insurance Code and public policy permit
State Farm to contract with Laurence to reduce the amount of UM benefits due her by the
amount of PIP benefits paid when the damages Laurence incurred were less than the combined
limits of both coverages. The provisions of the Insurance Code denying both offset and
subrogation to an insurer who pays PIP benefits suggest that an insured who receives these
benefits might be doubly compensated for her injuries.

 In contrast to the scheme of PIP benefits, an insurer paying UM benefits has a
right of subrogation from the proceeds of any settlement or judgment resulting from the
payee's exercising a right of recovery against anyone legally responsible for her injury. Code
art. 5.06-1(6) (West Supp. 1998). A right of subrogation evinces a policy that an injured
person be made whole, but not better than whole. See Ortiz v. Great S. Fire & Casualty Ins.
Co., 597 S.W.2d 342, 343 (Tex. 1980); Esparza v. Scott & White Health Plan, 909 S.W.2d
548, 552 (Tex. App.--Austin 1995, writ denied). In addition, when an uninsured motorist
causes only property damage, an insured can recover under both her collision coverage and her
UM coverage, provided that "[i]n no event shall the insured recover under both coverages
more than the actual damages suffered." Code art. 5.06-1(4)(b) (West 1981). Thus, the PIP
statute permitting double recovery in some cases and the UM statute, apparently precluding it,
are at odds with each other. Because the statutes themselves do not definitively resolve the
issue before us, we turn to the cases construing them for guidance, keeping in mind the
legislature's intent to protect those harmed by uninsured motorists from financial loss.

 After the legislature enacted the requirement of UM coverage, insurers began to
insert into automobile policies clauses that purported to offset certain payments against UM
benefits. This is exemplified in the present cause whereby State Farm has inserted into
Laurence's policy a provision offsetting from "covered damages" various collateral sources
including other insurance, workers' compensation, disability benefits, auto medical expense
benefits, and PIP benefits. Such offset clauses have generated substantial litigation.

 In Ranzau, for instance, the insured was riding in another's car when she was
injured by an uninsured motorist. Ranzau's damages exceeded the UM limits of both her
policy and the car owner's policy. The car owner's insurer paid Ranzau the policy limits, but
her own insurer refused to pay her, invoking a clause offsetting other insurance payments
against UM benefits. 481 S.W.2d at 795. The supreme court held that Ranzau was entitled to
recover the full limits of each policy to compensate her actual damages. Id. at 797. The court
invalidated the "other insurance" clause insofar as it limited Ranzau's recovery to the statutory
minimum for one policy when she was eligible to recover for her damages from an additional
source. The court directed its concern toward making effective for each policy the minimum
coverage required by the UM statute when the insured's damages exceed the combined
minimum coverages. Id. Thus, when more than one insurer has provided coverage to an
insured, the minimum coverage required for each policy cannot be reduced so as to limit the
insured's recovery of actual damages.

 In Gatlin, the court of appeals considered a similar clause and held that the UM
statute sets a minimum amount of coverage, but does not limit the total amount of recovery so
long as that amount does not exceed the amount of actual loss. 470 S.W.2d at 928. The
insured in Gatlin, whose loss exhausted the limits of one policy, could thus proceed under
another available policy. The court declined to imply that an insured could recover from
separate policies more than the actual loss and specifically reserved making such a ruling. Id. 
See also Travelers Indem. Co. v. Lucas, 678 S.W.2d 732, 735 (Tex. App.--Texarkana 1984,
no writ) (insured could recover UM limits from each of two policies to extent recovery did not
exceed actual damages); Northwestern Mut. Ins. Co. v. Lawson, 476 S.W.2d 931, 935 (Tex.
Civ. App.--Tyler 1972, no writ) (insured could be reimbursed from two policies, provided
that in no case could he recover more than his actual loss).

 Texas courts have also invalidated clauses offsetting workers' compensation
payments against UM benefits. E.g., Hamaker v. American States Ins. Co., 493 S.W.2d 893,
898 (Tex. Civ. App.--Houston [1st Dist.] 1973, writ ref'd n.r.e.); Fidelity & Casualty Co. v.
McMahon, 487 S.W.2d 371, 372 (Tex. Civ. App.--Beaumont 1972, writ ref'd n.r.e.). And
clauses offsetting medical payments coverage have likewise been invalidated. E.g.,
Westchester Fire Ins. Co. v. Tucker, 512 S.W.2d 679, 685-86 (Tex. 1974). In Westchester,
the insured incurred actual damages well above the combined limits of her medical payment
and UM coverages. 512 S.W.2d at 680. Although the insured's actual loss in Hamaker had
not been judicially determined before the appeal was taken, the court quoted approvingly from
an opinion invalidating an offset clause when no question of double recovery was presented. 
493 S.W.2d at 897 (citing Williams v. Buckelew, 246 So.2d 58, 68 (La. App.1970)). Among
those cited, the court in McMahon alone appears to have condoned a recovery in excess of
actual damages sustained. 487 S.W.2d at 372.

 Apart from McMahon, the cases discussed stand for the proposition that an
insurer cannot use an offset clause to avoid paying the minimum amount of UM coverage
required by statute when to do so would reduce the insured's recovery of actual damages. 
Each case is qualified by the fact that the insured's damages exceeded all available sources of
reimbursement and double recovery was not in question. Our case differs from these cases
because Laurence's damages are less than the combined limits of her PIP and UM coverages. 
The case most like Laurence's is American Motorists Insurance Co. v. Briggs, in which the
supreme court considered the effect of an other-insurance clause when the amount of damages
the insured sustained was less than the limits of both policies together. 514 S.W.2d 233 (Tex.
1974).

 In Briggs, Mr. and Mrs. Briggs were riding in a car owned by Mr. Briggs'
employer when they were injured by an uninsured driver. Both the employer and the Briggses
had insurance policies providing $10,000 per person in UM coverage. Mr. Briggs' damages
were $13,500 and Mrs. Briggs' were $7,250. The employer's insurer paid the Briggses
$5,750 each, and the Briggses claimed the remainder of their actual damages from their own
insurer. Briggs, 514 S.W.2d at 234.

 The supreme court distinguished the case from Ranzau in that the total damages
suffered by each of the Briggses were less than the total coverage available if both policies
applied. Id. at 235. The court then held that, when UM coverage exists, the insured can
recover under the policy for actual damages to the extent of the policy limits, without regard to
the existence of other insurance. If coverage exists under two or more policies, liability on the
policies is joint and several to the extent of the insured's actual damages, subject to the
qualification that no insurer can be required to pay more than the policy limits. Id. at 235-36.

 The court calculated the amount the Briggses' insurer owed by subtracting from
Mr. and Mrs. Briggs' actual damages the amount the employer's insurer had paid each. The
Briggses' insurer was liable for the remainder of the actual damages each sustained. Id. at
236. Because the remaining damages were less than the required minimum UM coverage of
$10,000 per person, the Briggses' insurer was not required to pay that minimum to each of the
Briggses.

 Briggs embodies the principle that when multiple UM coverages exist, which
together exceed the insured's actual damages, the total amount of UM benefits paid to the
insured is limited to the insured's actual damages. This Court applied the principle to a similar
case in which the combined UM coverages exceeded actual damages to the insured. See
Employers Casualty Co. v. Sloan, 565 S.W.2d 580, 585 (Tex. Civ. App.--Austin 1978, writ
ref'd n.r.e.).

 We believe that, despite the holding in Dabney v. Home Insurance Co., the
principle of Briggs applies to the case here. 643 S.W.2d 386 (Tex. 1983). In Dabney, the
supreme court held that the car owner's insurer could not offset PIP payments it had paid the
owner and his passengers against UM benefits they claimed. 643 S.W.2d at 389. Likening
PIP coverage to medical payments coverage, the court based its holding on Westchester, (3) but it
made no mention of either the total amount of damages sustained by the insureds or the amount
of the policy coverages. Because Dabney does not expressly decide the issue considered in
Briggs and present in this case, we do not apply it here. See also Lucas, 678 S.W.2d at 736
(without stating total amount of damages, court held that Dabney prohibited insurer from
offsetting PIP benefits against UM payments).

 Our review of the cases persuades us that the clause here, allowing State Farm
to offset PIP benefits against UM benefits to prevent a double recovery, violates neither the
Insurance Code nor Texas' public policy. (4) The clause furthers the legislature's goal of
protecting those harmed by uninsured motorists from financial loss, but only to the extent of
their actual losses. We find nothing in the statutes that evinces an intent of the legislature to
permit a double recovery. We necessarily limit our holding to a situation in which the
insured's actual damages are less than the combined PIP and UM coverages. (5) Our holding
comports with the views of several commentators on insurance law. See 12A Mark S. Rhodes,
Couch on Insurance 2d § 45:652, at 212-13 (Rev. ed. 1981) (goal of UM coverage, to make
claimant whole but not allow double recovery, may allow the amount recoverable to be
reduced by the amount received from another source); 1 Alan I. Widiss, Uninsured and
Underinsured Motorist Insurance § 14.5, at 690-91 (2d ed. 1985) (reducing UM benefits by
amount of no-fault benefits is justified to avoid double recovery).



CONCLUSION

 Because we conclude that the trial court correctly granted State Farm's
summary-judgment motion and denied Laurence's motion, we overrule Laurence's point of
error. We affirm the judgment of the trial court.

 


 Mack Kidd, Justice

Before Justices Jones, Kidd and Powers*

Affirmed

Filed: January 14, 1999

Publish













* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. [1] The statute has been amended three times since its enactment. However, the substantive
changes to the Act dealt with the inclusion of underinsured motorist coverage in addition to
uninsured motorist coverage and do not affect the issues presented by this appeal.
2. [2] Article 5.06-3(b) provides: 


"Personal injury protection" consists of provisions of a motor vehicle liability
policy which provide for payment to the named insured in the motor vehicle
liability policy and members of the insured's household, any authorized
operator or passenger of the named insured's motor vehicle including a guest
occupant, up to an amount of $2,500 for each such person for payment of all
reasonable expenses arising from the accident and incurred within three years
from the date thereof for necessary medical, surgical, X_ray and dental
services, including prosthetic devices, and necessary ambulance, hospital,
professional nursing and funeral services, and in the case of an income
producer, payment of benefits for loss of income as the result of the accident; 
and where the person injured in the accident was not an income or wage
producer at the time of the accident, payments of benefits must be made in
reimbursement of necessary and reasonable expenses incurred for essential
services ordinarily performed by the injured person for care and maintenance of
the family or family household. The insurer providing loss of income benefits
may require, as a condition of receiving such benefits, that the insured person
furnish the insurer reasonable medical proof of his injury causing loss of
income. [Unless otherwise agreed] the personal injury protection in this
paragraph specified shall not exceed $2,500 for all benefits, in the aggregate,
for each person.


Tex. Ins. Code Ann. art. 5.06-3(b). 
3. [3] Westchester Fire Ins. Co. v. Tucker, 512 S.W.2d 679, 685-86 (Tex. 1974).
4. [4] Although we do not adopt the reasoning, we concur with the results reached in James v.
Nationwide Property & Casualty Insurance Co., 786 S.W.2d 91, 94 (Tex. App.--Houston
[14th Dist.] 1990, no writ), and Kim v. State Farm Mutual Automobile Insurance Co., 966
S.W.2d 776, 779 (Tex. App.--Dallas 1998, no pet.).
5. [5] The PIP offset we consider in this appeal involves two provisions enacted by the Texas
legislature, namely the PIP and UM statutes. The remaining benefits the clause purports to
offset are not creatures of statute subject to the analysis we employ here, and we express no
opinion on the validity of those purported offsets.



n">CONCLUSION

 Because we conclude that the trial court correctly granted State Farm's
summary-judgment motion and denied Laurence's motion, we overrule Laurence's point of
error. We affirm the judgment of the trial court.

 


 Mack Kidd, Justice

Before Justices Jones, Kidd and Powers*

Affirmed

Filed: January 14, 1999

Publish













* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. [1] The statute has been amended three times since its enactment. However, the substantive
changes to the Act dealt with the inclusion of underinsured motorist coverage in addition to
uninsured motorist coverage and do not affect the issues presented by this appeal.
2. [2] Article 5.06-3(b) provides: 


"Personal injury protection" consists of provisions of a motor vehicle liability
policy which provide for payment to the named insured in the motor vehicle
liability policy and members of the insured's household, any authorized
operator or passenger of the named insured's motor vehicle including a guest
occupant, up to an amount of $2,500 for each